Case 85—ACTION BY LEO EDELEN'S ADMINISTRATRIX AGAINST THE LOUISVILLE RAILWAY CO. FOR CAUSING THE DEATH OF PLAINTIFFS INTESTATE, OCT. 26.

## Louisville Ry. Co. v. Edelen's Admr.

Appeal from Jefferson Circuit Court (Common Pleas Branch, 2d Division.)

THOMAS R. GORDON, Judge.

Judgment for Plaintiff. Defendant appeals. Reversed.

1. Street Railway—Boy Standing in Street—Duty of Motorman —Care Imposed—Where a boy between eight and nine years of age was seen by the street car motorman standing in the street seven or eight feet from the car track, the measure of care imposed by law upon the motorman did not require him to sound his bell, there being nothing in the boy's conduct to indicate that he was about to, or would attempt, to cross the track or to get on the track in front of the car.

2. Same—Lookout Duty—Notice to Motorman—Proximity of Boy to Car Track—It is the duty of the motorman to keep a look-

out at all times for persons using the streets; but the mere proximity of a boy nine years of age to the track is not sufficient notice to charge the motorman with the duty of ringing his bell and taking the precautions in anticipation that the boy may get in front of the moving car.

KOHN, BAIRD & SPINDLE and FAIRLEIGH, STRAUS & FAIRLEIGH, for appellant.

GREEN & VANWINKLE, of counsel.

## POINTS AND AUTHORITIES.

1.  The issue of contributory negligence was not properly submitted. (L. & N. v. Sights, 28 Rep., 186; Railroad v. Clark's Admr., 105 Ky., 584; Railroad v. Connelly, 9 Rep., 439; Railroad v. Wilson, 23 Rep., 685.)

2.  Doctrine of Last Clear Chance should not have been submitted. (Railway Company v. Colston, 25 Rep., 1933; Railroad v. Jones, 26 Rep., 31.)

3.  The instruction on unannounced negligence was erroneous.

4..  Peremptory instruction should have been given for appellant.

O'CONNOR & O'CONNOR and J. W. S. CLEMENTS, for appellee.

## POINTS AND AUTHORITIES.

"Pedestrians on the highway are not trespassers. They have an equal right to use the highways with the street cars. The car driver must keep a proper look out for their presence and give them timely warning of his approach. If he fails to keep such lookout and give such warning, his master will be liable for a resulting injury although the car was running at a reasonable rate of speed, and although, after the driver actually discovered the peril of the person on the track, he unavailingly used every means at his command to avert the injury." (S. C., &c., St. Ry. v. McHugh, 25 Ky. Law Sep., 1114.)

"A greater degree of vigilance and caution must be observed in controlling the movements of street cars to prevent injuries to children than is required for the safety of adults." (Passamaneck v. Lou. Ry. Co., 98 Ky., 205; Nellis on Street Railways, 206.)

"A peremptory instruction for a defendant ought not to be given unless, after admitting every fact proved to be true, as well as all reasonable inferences that can be drawn therefrom,

the plaintiff has failed to establish his case." (Fugate v. City of S., 16 R., 807; Eskridge's Ex. v. C., N. O. & T. P. R. R. Co., 89 Ky., p. 367.)

It was for the jury to say whether or not deceased used such care as boys of his age usually do; or whether he was when struck engaged in or still absorbed with the game; or whether or not the motorman could have observed said facts by use of ordinary care, or could have seen him and signalled before he ran on the track; or whether the motorman was negligent in trying to stop instead of giving signal; or whether deceased was standing eight feet away or "right at the track"; or whether the car was going fast or slow; or whether the fender of car was defective, and so caused deceased to be thrown therefrom; or whether Connolly's story of "suddenness" was to be taken with "a grain of salt," and as disproved by Mackin and the motorman. See (E. E. Semple Admr. v. Consolidated Light & R. Co. 54 L. R. A. 186; Schoner v. Citizens Trac. Co. 153 Pa. St. 29; Haiters v. Kansas City Cable Co. 12 S. W. 652; Mallard v. S. A. R. Co. 7 N. Y. S. 666; Galveston C. R. Co. v. Hewit, 3 S. W. 705.)

OPINION BY JOHN D. CARROLL, COMMISSIONER—Reversing.

In September, 1904, Leo Edelen, a boy between eight and nine years of age, was run over and killed by one of appellant's electric cars going west on Broadway between Twenty-Fifth and Twenty-Sixth streets, about 194 feet west of Twenty-Fifth street. Appellant asks a reversal of the judgment against it, first, because the trial judge refused to give peremptory instruction; and second, for errors in the instructions.

We have reached the conclusion that the peremptory instruction asked should have been given, and will therefore state in some detail the evidence. Broadway, at the point where the accident occurred, is 50 feet from curb line to curb line, and is occupied by two street car tracks. Leo Edelen had been playing a game called "dainty" with two other boys, and these two companions and the motorman were the only eye-witness to the accident. The boys had quit

playing, and were on the north side of the street when the accident occurred; Leo standing midway between the curb and the car track, and the other boys sitting down on or near the curb immediately opposite the point where Leo was killed. Paul Connelly, one of the little boys, testified as follows: "Q. Were you there when Leo was struck by the street car? A. Yes, sir. Q. Did you see him when he was struck by the street car? A. Yes, sir. Q. Did you see him immediately before he was struck by the street car—a short while before he was struck by the street car? A. No, sir. Q. Did you see him just before, a short time? A. Yes, sir; I seen him; he was standing up there a long time before he got struck. Q. Standing up where? A. In the middle of the street, about midways between the curb and the car track. Q. What was he doing just before he was struck by the car? A. He was standing up there talking. Q. Talking to whom? A. To me; Ben and I were sitting on the curbing. Q. Was he saying anything? A. He says he was going home to breakfast, and he turned suddenly and started across the street in a sudden run, and he never seen the car and run into the car. Q. How was he looking--which way was he looking? A. He was looking towards us on the curb. Q. On which curb were you—on the south side or the north side? A. On the north side." In the cross-examination he testified as follows: "Q. He started very suddenly and ran right in front of the car? A. Yes, sir. Q. How close was the car to him when he ran in front of it? A. About four feet. Q. Had Leo started home to breakfast when he started in front of the car, or was he running with the sticks? A. He had started home for breakfast. Q. He lived east of where you were playing—eastward? A. Yes, sir. Q. Of course, his direction to go home would not be towards Twenty-Sixth street—it would be towards Twenty-Fifth street? A. Yes,

sir. Q. He was standing out in front of you, between the car track and the curbing? A. Yes, sir; middle ways. Q. About middle ways between? A. Yes, Sir. Q. What part of the car did he run against first? A. The front. He ran right straight across the track, and he hit on that life guard, and it throwed him up.'' Ben Macklin, the other little boy who was present, testified: ''Q. Were you on the street, West Broadway, between Twenty-fifth and Twenty-sixth street on the morning when Leo Edelen was killed? A. I was on the curbing, sitting on the curbstone. He was between the curbing and the car track. Q. Who was? A. Leo. Q. Who was sitting with you? A. Nobody. I was sitting by myself. Paul Connelly was standing behind me on the grass. .Q. Where was Leo? He was between the car track and the curbing.. Q. Was he standing still? A. Yes, sir. Q. Which way was Leo looking? A. He was looking towards across the street. He said, 'I am going to eat my breakfast,' and he started to run, and the car struck him. Q. Did you see the car before it struck Leo? A. No, sir. Q. Do you know how long he was in the street between the curb and the street car track? A. About a minute. Q. How far out from the curbing was he—how near to the track? A. He was right in the middle of the street, between the car track and the curbing. Q. Do you know whether Leo saw the car before it struck him or not? A. I don't know.'' The car stopped at Twenty-Fifth street to let a passenger off, and was running at the usual rate of speed when the accident occurred. The motorman did not ring the bell or give any signal after leaving Twenty-Fifth street before his car struck the Edelen child. It is 17½ feet from the curbing on the north side to the first car track. It was a bright, clear morning, and there were no persons or objects on the street near where the little boys were.

The principal question in the case is, was the mo-

torman guilty of negligence in failing to ring his bell after leaving Twenty-fifth street when he saw, or by the exercise of ordinary care could have seen, Leo Edelen standing some seven or eight feet from the track? If it was the duty of the motorman to ring his bell under these circumstances, then his failing to do so was negligence. If the failure to ring the bell was not negligence, appellee is not entitled to recover. In one of the instructions the trial judge said to the jury: "If you believe that the boy, Leo Edelen, got upon the track of the street car, or was in the act of approaching the track in such a way as to indicate to the motorman or apprise the motorman in charge of the car that he was in the act of getting upon the track, far enough ahead of the car that the motorman in the exercise of ordinary care could have seen that fact in time, either by stopping the car or arresting its motion, or giving a signal of its approach, so as to notify the boy and to have avoided injuring him, and you believe from the evidence that the motorman failed to do this, then the law is for the plaintiff, although you may believe that the boy himself was negligent; that is, failed to use such care as I have said a boy of his age, experience, and intelligence usually excersises under such circumstances." We consider this a fair statement of the law applicable to this case; and, testing the facts stated by this rule of law, we are impelled to the conclusion that the motorman was not guilty of negligence. The eye-witnesses for plaintiff each testified that Leo was standing midway between the curbing and the car track, and that he suddenly left his position and ran straight across the track immediately in front of the approaching car. It must be conceded that the motorman could not have stopped his car after the boy started towards the track in time to prevent striking him; and we are of the opinion that the measure of care imposed by law upon the motorman did not

require him to sound his bell merely because he saw a boy standing in the street seven or eight feet from the car track—there being nothing in the boy's conduct or his actions or in the surrounding circumstances to indicate that he was about to or would attempt to cross the track or get on the track in front of the car. If the boys at the time had been playing on the car track or on the street, or if Leo had made any movement indicating that he was going to leave his position of safety, or if there was any evidence sufficient to put the motorman in the exercise of ordinary care on his part upon notice that the boy might attempt to cross the track in front of the street car, a different question would be presented. It is the duty of motormen to keep a lookout at all times for persons using the streets; but the mere proximiity of a boy nine years old to the track is not sufficient notice to charge the motorman with the duty of ringing his bell and taking other precautions in anticipation that the boy may get in front of the moving car.

Our attention has been called to the case of Louisville Railway Company v. Walker, 94 S. W. 635, 29 Ky. Law Rep. 663; but the facts are very different from those here presented. There the car was running at a high rate of speed, and the motorman testified that when about 20 feet from the child he saw her start across the street, going in the direction the car was running. Other witnesses testified that the child left the curbstone and started diagonally across the street when the car was more than 200 feet away, and that the car could have been stopped before reaching the child, who fell on the track. Nor are the cases of S. Cov. & Cin. Ry. Co. v. Herklotz, 20 Ky. L. Rep. 750, 104 Ky. 400, 47 S. W. 265; Pasamaneck v. Louis. Ry. Co., 98 Ky. 195, 17 Ky. L. R. 763, 32 S. W. 620; Owensb. City Ry. Co. v. Hill, 56 S. W. 21, 21 Ky. L. Rep. 1638, in point, as they deal with facts very different from those here presented. Under the

evidence exhibited in this record, upon the conclusion of the testimony for the plaintiff, the court should have given a peremptory instruction on behalf of the defendant.

The judgment is reversed, with directions for a new trial in conformity to this opinion.

Petition by appellee for rehearing overruled.