## Nunnelley's Administrator v. Muth, et al.

(Decided June 16, 1922.)

### Appeal from Fayette Circuit Court.

1. Evidence—Photographs.—Photographs shown to be accurate, but taken after an accident has occurred and purporting to show the location of moving objects at the time of the accident according to the recollection of a witness to the accident, are incompetent as evidence, since they are in effect merely corroborative of the witness who indicated the locations and are in the nature of self-serving statements.

2. Evidence—Photographs.—Photographs of the scene of an accident, showing the location of permanent objects about which there is no dispute, are competent as an aid to the jury in arriving at an intelligent understanding of the situation at the time the accident occurred.

3. Highways—Motor Vehicles—Negligence of Driver—Instructions.—Where a statute requires that the driver of a motor vehicle signal its approach to one on a public highway, the court should define the driver's duty in that respect in the instructions given, and the failure to do so where such an instruction is offered is error.

4. Highways—Motor Vehicles—Signals.—Evidence examined and held to be sufficient to require the giving of an instruction to the jury defining the duty of the driver of a motor vehicle, as provided by a statute then in effect, to signal its approach to one walking on a public highway.

D. C. HUNTER and WALLACE MUIR for appellant.

GEORGE C. WEBB and JOHN P. HASWELL for appellees.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing.

About 3 o'clock in the afternoon of January 16, 1920, Clifton Porter Nunnelley, an 8-year-old boy, was killed

in Fayette county on the Bryant Station turnpike by a
Ford truck driven by John Muth. The father of the boy
qualified as his administrator and filed this suit for $30,-
000.00 damages against John Muth, Pierre Muth, Hen-
rietta Muth and Louis Muth, alleged to be partners do-
ing business under the name and style of Muth Grocery
Company. He alleged that defendants were the owners
of the Ford truck that was used and operated in the busi-
ness of the Muth Grocery Company, and that John Muth
carelessly and negligently drove the truck against and
over Clifton Nunnelley on January 16, 1920, on the Bry-
ant Station turnpike, about two miles from Lexington,
inflicting mortal injuries on the decedent from which he
died the following day.

Pleading to an issue as to the negligence averred, and
the contributory negligence of the decedent and his
father as set out in the answer, a trial was had and the
jury returned a verdict for defendants, upon which judg-
ment was rendered. To reverse that judgment this ap-
peal is prosecuted.

Appellant contends that two errors were committed
on the trial: (1) the rejection of photographs offered
in evidence, and (2) the failure to embrace in the instruc-
tions given a correct measure of the duty owing to de-
cedent.

Clifton Nunnelley rode to the scene of the accident with
his father and elder brother in a Ford automobile. The
curtains were up and the car was stopped on the roadside.
The boy opened the door, got out of the car and started
diagonally across the road to a gate on the opposite side
to open it. His father remained in the car and, as he
says, was looking into an adjoining field in an effort to
locate a cow that he desired to see. John Muth and his
father were returning to Lexington in the Ford truck,
and, according to their testimony, Clifton Nunnelley
stepped from behind the car in which he had been riding
immediately in front of their car. John Muth testified
that when he first saw the boy he was on the point of the
fender, that the truck was moving at the rate of twelve
or fifteen miles an hour, and at that rate of speed he could
have stopped it within fifteen feet. Roy Parker, who has
since died, gave his deposition in the case, and he testi-
fied that the truck was moving at the rate of about twenty
miles an hour, that it had passed him shortly before the
accident, as he proceeded along the pike in the direction
that it was going, and that the decedent was about fifty-

five feet from the truck when he first appeared in the road.

Parker visited the scene of the accident with a photographer before his deposition was taken, and indicated to the photographer his conception of the respective locations of Nunnelley's machine and the truck at the time that Clifton Nunnelley first became visible to the driver of the truck. He also indicated his own location on the pike with respect to the point of accident. Photographs were taken showing machines at these locations, also showing a man on horseback where Parker claimed to have been, and a boy representing the deceased. These photographs were offered in evidence. The trial court rejected them and the argument is made that the ruling was erroneous.

The competency of the photographs is insisted upon on the idea that they were shown to have been accurately taken and developed and that they portray, according to Parker's recollection, the location of the moving objects at the time the boy could first have been seen by the driver of the truck. Upon that hypothesis it is argued that they are certainly as competent as the testimony of the witness himself, and that their admission in evidence would have aided the jury in determining the situation of the parties immediately preceding and at the time of the accident. Numerous decisions from other jurisdictions are cited, as approving the competency of this character of evidence, but many of the authorities relied on, including text books, pertain to photographs of the locus in quo or of permanent objects about the location of which there is no dispute. Photographs of the scene of the accident and of permanently located objects, shown to be accurate, are admissible in evidence in this jurisdiction, on the ground that they enable the jury to acquire a more intelligent understanding of the situation than could be obtained from a verbal description by the witnesses. But we have never held where the question was raised that photographs taken to show a witness' recollection of the location of moving objects are competent.

The latest utterance of this court on the subject is found in Welch v. L. & N. R. R. Co., 163 Ky. 103, in which it was held that photographs taken after the accident, showing the precise position of a party at the time of the accident, are inadmissible. The decision was based on the ground that a photograph of that kind is self-serving and cannot be used to corroborate a witness or to furnish

evidence of the position of the party at the time of the injury. This, in our opinion, is sound since the photograph does not show the facts with reference to the location of the injured party or other moving objects at the time of the accident, but is merely an ocular demonstration of the witness' conception of such locations. If such photographs were held competent, then every witness testifying might introduce photographs of his conception of the location of moving objects and there would be no end to the attempt to corroborate the witnesses by what amounts to self-serving statements.

Bowling Green Gas & Light Co. v. Dean's Admr., 142 Ky. 678, does not in terms draw the distinction that we held sound in the Welch case, *supra,* and that is recognized in many states, but it is to be noted that the photographs in that case "represented conditions as they actually were and not the theory of one party or the other." If the photographs offered in evidence here did not represent the theory of one side, as opposed to that of the other, but portrayed conditions as they actually were and about which there was no dispute they would be competent. But there is a diversity of opinion in the evidence as to the location of the decedent with reference to the truck when he started across the road, and that very fact renders the photographs inadmissible. The court did not err in excluding them from the consideration of the jury.

The next contention of appellant is that the instruction given to the jury by which the duties of the driver of the Ford truck were defined is defective, in that it did not require the driver of the truck to signal its approach to the child in the roadway. Appellant offered an instruction embodying his view of that phase of the law. It comports with the requirements of section 2739g-15 of Kentucky Statutes, in effect at the time of this accident, by the provisions of which the driver of an automobile, upon approaching a person walking on a roadway or a public highway, was required to give warning of the approach of the motor vehicle by signaling with a horn, bell or other device. We held that the statute was a police regulation having for its aim the protection of the lives of those whose safety might be imperiled by the careless or reckless driving of a motor vehicle. (National Casket Co. v. Powers, 137 Ky. 156; Moore v. Hart, 171 Ky. 175.)

It is contended for appellees, however, that the failure to include this imposed duty in the instructions given was not prejudicial under the facts proven, because Clifton

Nunnelley, according to appellant's evidence, did not start across the roadway until the truck was within fifty-five feet of him and the truck was then going at the rate of twenty miles an hour. Hence it is said that Muth had only two seconds in which to see the boy, give the signal, put on the brakes and stop the car, and that if he had seen the boy when he was fifty-five feet away it would have been his duty to put on the brakes and make every possible effort to avoid a collision by stopping the car, and the performance of that duty would have occupied more than two seconds of his time. The argument is not without merit but it is not conclusive, in view of Muth's testimony that he could have stopped the truck in a distance of fifteen feet. And it does not appear that an attempt to stop the truck would have precluded the giving of a signal at the same time.

Nor was the duty of signaling the approach of the truck obviated by reason of the fact that the driver did not see Clifton Nunnelley until the latter was practically on the point of the fender. There is evidence to show that he could have seen the boy at a distance of fifty-five feet from the point of the accident. It was for the jury to say whether he could have seen the boy at that distance, and, if they believed from the evidence that he could, whether in the exercise of ordinary care he could have given a signal and averted the accident. The instructions should have included a definition of the driver's duty with reference to signaling the approach of the truck. Such an instruction was offered by appellant and the failure to give it or to embody the idea in the instructions given was error.

In all other respects the instructions are proper, but the error indicated was prejudicial and for that reason the judgment is reversed and the cause remanded for a new trial.