## Metts' Administrator v. Louisville Gas & Electric Company.

(Decided January 10, 1928.)

### Appeal from Jefferson Circuit Court
### (Common Pleas Branch, Fourth Division).

1.  Municipal Corporations.—In action against truck owner for death of seven year old boy, instruction to find for defendant if deceased came into path of truck so suddenly that accident could not have been avoided held erroneous, in view of testimony that deceased was traveling on highway near path of approaching car before accident and truck driver failed to give signal or regulate speed or control of truck, since in such case instruction should be limited to act of suddenly emerging from place of obscurity at time of collision.

2.  Municipal Corporations.—"Sudden appearance" defense, under which truck owner is not liable for death of one appearing from

place of obscurity in path of truck so suddenly that accident cannot be avoided, may be invoked against infant who is incapable of either contributory negligence or assumed risk.

3. Municipal Corporations.—"Sudden appearance" defense, under which truck owner is not liable for death of one appearing from place of obscurity in path of truck so suddenly that accident cannot be avoided, may be relied on, even though defendant is guilty of some negligence, where such negligence is not cause of death.

4. Municipal Corporations.—It is duty of driver of automobile to observe lookout on street, and if there are persons in proximity to path of cars, unless it is evident that they are aware of its approach and out of danger, to give warning signal, bring car under control, regulate speed, and exercise ordinary care generally to avoid injury to them.

5. Municipal Corporations.—In instructions in action against truck owner for death of seven year old boy, "ordinary care," as applied to defendant's driver, means that degree of care usually exercised by ordinarily careful and prudent person to avoid injury to child of size and apparent age of deceased under similar circumstances.

6. Negligence.—In action against truck owner for death of seven year old boy, "ordinary care," as applied to deceased, means that degrees of care usually exercised by ordinarily careful and prudent boys of age, intelligence, and experience of deceased under similar circumstances.

J. S. LUSCHER, JAMES R. PARR and W. W. DOWNING for appellant.

O'NEAL & O'NEAL, FRED FORCHT and L. R. CURTIS for appellee.

Opinion of the Court by Judge McCandless—Reversing.

This is an appeal from a judgment for defendant, based on the verdict of the jury in the suit of Charles H. Metts' Administrator v. Louisville Gas & Electric Company. The facts are these:

Appellant's intestate, an infant seven years of age, was run over and killed by a truck of appellee. The truck was going south on the west side of Clay street, and the accident occurred just south of the intersection of Clay and Caldwell streets. The intestate and three companions came north on Clay street on their return from a ball game. At Clay and Kentucky streets three of them climbed on the rear end of a wagon owned by the Horn Transfer Company, which was proceeding north within five or six feet of the street curbing on the eastern side. Apparently the Metts boy did not climb into the

wagon, but swung on the rear end. Two of his companions were quite young and did not testify. The third, Frank Ansert, who was ten years of age, says that the driver of the wagon discovered the three boys thereon and ordered them off. About the time the wagon passed Cornet alley, which intersects with Clay street something near the center of the block, the Metts boy turned loose the wagon and traveled along by the left side of its rear end. The other three also got off, and two of them ran to the right side of the street while witness followed the wagon with his right hand on the tailgate, the Metts boy continued on his left. While on the wagon witness saw the truck crossing Breckenridge street intersection over a block away. It was moving rapidly, and about the time the front of it reached the horses' heads the Metts boy turned suddenly and ran across the street in front of it. Witness grabbed his shirt, but it gave away and the boy ran on and was struck by the left front fender and run over by the wheel. A lady who was sitting in a parked car on the eastern side of Clay street and about one-third of a square north of the Caldwell street intersection testified that she was looking south; that the truck passed her going rapidly and without giving any signal; there was a clearance of some 6 or 8 feet between it and the wagon; she also says that one of the boys was running along by the side of the wagon, and as the truck neared it ran out in front of it. She went immediately to the scene and was the first to arrive. Both wheels of the truck had run over the boy. A witness for plaintiff fixed the point of the accident as about 15 feet south of the street intersection, and other witnesses testify that the truck ran after striking the boy from 25 to 75 feet.

The driver of the truck testified that he saw a boy in the wagon, but did not see the boy on the street until he ran into the truck, when he did everything in his power to stop it; that he slowed up for the Caldwell street intersection, and was not going over 10 miles an hour when the accident occurred, this being about 75 feet from the crossing. He is corroborated in this statement by two other witnesses who were riding on the truck, and practically so by the driver of the transfer wagon. Defendant's witnesses fix the distance in which the truck was stopped at from 15 to 30 feet.

The jury returned the following verdict: "We the jury find the accident unavoidable and therefore find for the defendant under instruction No. 4." On this appeal

the principal criticism is directed at that instruction which reads:

"If you believe from the evidence that plaintiff's decedent, Charles Metts, came into the path of the truck driven by Thomas Griley so suddenly and so near thereto that had the said Thomas Griley been operating said truck at a reasonable rate of speed, he could not by the exercise of ordinary care and the use of the means at his command, have brought his truck to a stop, slackened its speed, or changed its course in time to have avoided striking the plaintiff's decedent, then the law is for the defendant, and you will so find."

In giving this instruction the trial court submitted the so-called "sudden appearance" defense, according to defendant's theory of the case.    But a serious question arises whether it should be qualified to conform to plaintiff's theory.    The "sudden appearance" defense seems to rest on the theory that as to the driver the collision is an unavoidable accident.    It rather presupposes contributory negligence or assumed risk upon the part of the injured person, though not necessarily so as it may be invoked against an infant who is incapable of either of these.    Also it may be relied on even though defendant was guilty of some negligence, if such negligence was not the cause of the injury, and under conflicting statements of fact instructions upon this defense and the "last clear chance" in favor of plaintiff may both be given.    Thus it is applicable to trespassers upon railway tracks to whom enginemen owe no duty until their peril is discovered, citations on this point being superfluous. and as to persons who leave the sidewalk or emerge from behind another vehicle or other obstruction and appear upon the highway in the path of the oncoming vehicle so suddenly that the driver thereof in the exercise of ordinary care could not have prevented a collision with the means at hand if he had been running at a reasonable rate of speed: Finnegan v. Floyd, 214 Ky. 416, 283 S. W. 402; Lex. Ry. Co. v. Van Laden's Admr., 107 S. W. 740, 32 Ky. Law Rep. 1047.    And it applies even though the injured party be an infant: P. Bannon Pipe Co. v. Craig's Adm'r, 211 Ky. 562, 277 S. W. 855; Lawson v. Gleeson, 209 Ky. 37, 272 S. W. 56; Bray-Robinson Co. v. Higgins, 210 Ky. 432, 276 S. W. 129; Hornek Bros. v. Strubel, 212 Ky. 631,

279 S. W. 1087; I. C. R. R. Co. v. Dupree, 138 Ky. 459, 128 S. W. 334, 34 L. R. A. (N. S.) 645; L. & N. R. R. Co.. v. Gilmore's Adm'r, 131 Ky. 132, 109 S. W. 321, 33 Ky. Law Rep. 74, 21 L. R. A. (N. S.) 723; L. & N. R. R. Co. v. Benke's Adm'r, 164 Ky. 798, 176 S. W. 212. And again where an adult is upon the street in a place of safety but in proximity to the path of an approaching car of which he is aware. If the driver knows this he may assume that the pedestrian will act with reasonable prudence. Indeed, in one such case the rule was applied to an infant nine years of age, who probably was unaware of the car's approach (see Louisville City Ry. Co. v. Edelen's Adm'r, 123 Ky. 629, 96 S. W. 901, 29 Ky. Law Rep. 1125); though perhaps in the latter case the rule was carried further that its just limits, to which reference will be made later.

On the other hand it is the duty of the driver of an automobile to observe a lookout upon the street, and if there are persons in proximity to the path of the car, unless it is evident that they are aware of its approach and out of danger, to give a warning signal, to bring his car under control, to regulate its speed, and exercise ordinary care generally so as to avoid injury to them. Leach v. Owensboro City Ry. Co., 137 Ky. 292, 125 S. W. 708; I. C. R. R. Co. v. Murphy's Adm'r, 123 Ky. 787, 97 S. W. 729, 30 Ky. Law Rep. 93, 11 L. R. A. (N. S.) 352; Conley's Adm'r v. Cincinnati Ry. Co., 89 Ky. 402, 12 S. W. 764, 11 Ky. Law Rep. 602; L. & N. R. R. Co. v. Potts, 92 Ky. 30, 17 S. W. 185, 13 Ky. Law Rep. 344; Barber v. Cincinnati, etc., R. R. Co., 21 S. W. 340, 14 Ky. Law Rep. 869; I. C. R. R. Co. v. Mahan, 34 S. W. 16, 17 Ky. Law Rep. 1200; L. & N. R. R. Co. v. Lowe, 118 Ky. 260, 80 S. W. 768, 25 Ky. Law Rep. 2317, 65 L. R. A. 122; Lou. Ry. Co. v. Garr (Ky.) 112 S. W. 1130; Ohio Valley Mills Co. v. Louisville Ry. Co., 168 Ky. 760, 182 S. W. 955; Ky. T. & T. Co. v. Humphrey, 168 Ky. 621, 182 S. W. 854; Louisville Ry. Co. v. Broaddus, 180 Ky. 303, 202 S. W. 654; Ky. T. & T. Co. v. Jenkins, 171 Ky. 539, 188 S. W. 645; Nunnelley's Adm'r v. Muth, 195 Ky. 352, 242 S. W. 622, 27 A. L. R. 910; Louisville Ry. Co. v. Johnson's Adm'r, 131 Ky. 277, 115 S. W. 207, 20 L. R. A. (N. S.) 133.

Illustrating the above principles, in Louisville Ry. Co. v. Gaar, supra, an infant 4½ years of age was run upon by a street car. Plaintiffs' evidence conduced to show that he ran across the track and back and could have been seen by the motorman for a distance of 200

feet. The motorman testified that the child left the curb 20 feet distant and ran upon the track directly in front of the car too late for him to avoid striking it. This court prepared instructions requiring the motorman to observe a lookout duty, to regulate the speed of the car and have it under control, and otherwise to exercise ordinary care, and in the event of a failure to discharge any of these duties and of an injury to plaintiff directly resulting therefrom authorized a verdict for plaintiff. The second instruction was a converse of this, and the third provided:

"If the jury believe from the evidence that the plaintiff went out in the street so close to the car that, if the car was running at a reasonable rate of speed as defined in No. 1, the motorman could not by the exercise of ordinary care have perceived his danger, and stopped the car so as to avoid injury to him, the jury should find for the defendant."

On account of the age of the child no instruction was given on contributory negligence. In Lousville Ry. Co. v. Broaddus, supra, a child six years of age ran diagonally across the street over the north-bound main and upon the south-bound main of the Louisville Railway Company, where it was run over and killed by a passing car. The defense was that the child came from behind the car on the other main and appeared on the track before the moving car so suddenly as to render it impossible for the motorman to avoid the injury. The first instruction was similar to the one given in the Gaar case, supra. Instruction No. 2 directed the jury that "it was the duty of the decedent for his safety to exercise that degree of care usually exercised under circumstances like or similar to those shown by the evidence by ordinarily prudent children of his age, intelligence, and experience to learn of the approach of the car and keep out of its way, and if he failed to exercise for his own safety such degree of care and by reason of such failure helped to cause or bring about his death, . . . to find for the defendant." The last clear chance instruction was also given in favor of plaintiff. Both were approved by the court although criticized by counsel.

In Ross v. Louisville Taxicab & Transfer Co., 202 Ky. 828, 261 S. W. 590, plaintiff and his wife started across Third street in Louisville about the center of the block. The street was 38 feet wide. As they reached a

point two-thirds across the street they were struck by a passing auto. It was at night, but the street was well lighted. Defendant's proof was that plaintiffs came out from behind a machine that was parked on Third street 8 or 10 feet in front of the taxi and so close that the driver could not avoid injuring them after discovering their peril. This court directed that the contributory negligence instruction should be modified so as to authorize a recovery on the last clear chance theory. The third instruction given reads:

> "If you believe from the evidence that Ross came suddenly from the sidewalk in front of the approaching taxicab and so close in front of it that the chauffeur could not by the exercise of ordinary care and the use of the means at his command either stop his cab or change its course or give Ross warning of his presence by the usual and customary signals in time to have avoided the collision, then you should find for the defendant."

In Bray-Robinson v. Higgins, supra, a truck ran upon an infant 3½ years of age, who had left the pavement and started across the street. The defense claimed that it ran out from behind a wagon which was standing at the curb, the plaintiff's evidence being that there was no such wagon. This court held that upon the whole case the defense should have been submitted to the jury as to whether "the accident was due to the little child running out suddenly from the side walk and too close to the truck for the truckman to avoid the injury to her," and that all reference to the wagon should have been omitted.

In E. H. Ewing & Sons v. Arnold, 199 Ky. 513, 251 S. W. 626, it appeared that three boys had started across the street and one of them stopped and was seen to gather some snow from the fender of an automobile standing near the sidewalk. He later attempted to cross the street and was run over by a passing car, whose chauffeur claimed not to have seen the first two boys but saw plaintiff and claims to have thought he would remain standing at the place he was gathering snow. The court was of the opinion that the chauffeur must have seen the other two boys run across the street, and said that under the circumstances he was under the duty of sounding his horn and taking reasonable precautions in anticipation of the boy attempting to cross the street in front of the moving car; and in this it is differentiated from the Edelen case.

In Nunnellcy v. Muth, 195 Ky. 352, 242 S. W. 622, 27 A. L. R. 910, an infant was killed while crossing a public highway in front of a Ford truck. Defense was that he came from behind another machine too suddenly to avoid injury. The case was reversed on account of a failure to instruct the jury upon the duty of the driver to give signals of his approach—this on the theory that under the evidence the boy might have been seen for a distance of 55 feet and the truck might have been stopped within a distance of 15 feet.

From the above resume it does not appear that the sudden appearance doctrine has ever been applied where the facts showed the injured party to be traveling on the highway near the path of an approaching car of which he was unaware, and where it appeared that he was visible to the driver of the car and the driver gave no signals nor took any other precautionary steps prior to the time such person turned directly in the path of the car.

The Edelen case, supra, rested on the fact that the pedestrian was standing still talking to some other boys who were seated on the curb, and that he suddenly turned and ran in front of the car, the court being of the opinion that under the circumstances the driver of the car was not required to anticipate such a sudden movement. We need not here discuss the soundness of that distinction because in this case the boy was in motion all of the time, nor did he leave the sidewalk as in the Higgins case and the other cases, supra. The only object that could have obscured the driver's vision was the wagon. If, hidden by the wagon, the boy suddenly ran from behind it and into the path of the truck, the instruction was proper. But if he was running by the side of the wagon, in perhaps six feet of the truck's path and visible to the driver and the latter failed to give a signal or to regulate the speed or control of the truck or even to observe him until just as he was struck, the sudden appearance defense would not apply. Hence the instruction should have been limited to the act of suddenly emerging from a place of obscurity at the time of the collision, and for this reason the case must be reversed. In another trial instruction No. 1 may be given substantially as follows:

It was the duty of defendant's driver at the time and place referred to in evidence to have his truck under reasonable control, to operate it at a

reasonable rate of speed, having regard for traffic conditions and the use of the highway, and to keep a lookout for persons and vehicles upon the street; and if you believe from the evidence that deceased, Charles Metts, was near the path of the truck and that he was seen by its driver or could have been seen by him in the exercise of a reasonable lookout duty as above set out, then it became the further duty of the driver to exercise ordinary care, as defined in the fifth instruction herein, to operate said car so as to avoid injury to him, and if you believe from the evidence that he failed in the performance of any one or more of said duties, and by reason of such failure, if any there was, his truck was caused to run upon Charles Metts and destroy his life, or if you believe as set out in the fourth instruction, the law in either event is for the plaintiff and you will so find. But unless you so believe from the evidence, or if you believe as set out in instruction No. 3, you will find for defendant.

Instruction No. 2 on contributory negligence will be given as in the first trial except the words, "as defined in the fifth instruction," will be inserted after the words "ordinary care" in the third line. No. 3 will be omitted, as the right of recovery therein specified is embraced in instruction No. 1, supra. No. 4 will be No. 3 on the next trial and will be qualified by inserting the words, "suddenly ran from behind the wagon and," after the words "Charles Metts" and before the word "come" in the second line. No. 5 relating to size and speed of truck will be changed to No. 4. No. 6 should be numbered 5 and read as follows:

"In these instructions the phrase 'ordinary care' as applied to defendant's driver means that degree of care usually exercised by an ordinarily careful and prudent person to avoid injury to a child the size and apparent age of Charles Metts under circumstances like or similar to those of this case, and as applied to the decedent, Charles Metts, means that degree of care usually exercised by ordinarily careful and prudent boys of the age, intelligence, and experience of the said decedent under circumstances alike or similar to those of this case."

Wherefore the judgment is reversed and cause remanded for proceedings consistent with this opinion.