## West Kentucky Transportation Co. et al. v. Dezern.

(Decided April 23, 1935.)

WOODWARD, HAMILTON & HOBSON for appellants.

W. S. HEIDENBERG, DAVID O'KOON and STEINFELD & STEINFELD for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

·Naomi Dezern, suing by her mother and next friend, Addie Dezern, has recovered judgment for personal injuries against the West Kentucky Transportation Company, a corporation, and Harned Layman, one of its truck drivers, and the defendants are appealing.

The grounds assigned and relied on for reversal are: (1) That the verdict is flagrantly against the weight of the evidence; and (2) that the instructions given are erroneous and prejudicial. Naomi Dezern, who was nearly 11 years old at the time of the accident resulting in her injuries, lived with her mother on Jefferson street near to and east of Seventh street in Louisville. On January 27, 1934, she was ·sent from her home to O'Koon's grocery located on the west side of Seventh street and near an alley between Jefferson and Market streets, and in so doing it was necessary for her to cross Seventh street. In going she followed the regular crosswalk at the intersection and turned north to the grocery, where she procured a jar of mayonnaise. On her return, and when she reached a safety zone approximately 47 feet in length, the north end of which is about 56 feet from the north curb line of Jefferson street, she stepped out in the street, and, according to her evidence looked both ways and, seeing no vehicles approaching, started across the street. When she had passed beyond the middle of the street, she was either struck or came in collision with a truck of the West Kentucky Transportation Company driven by Harned Layman. She sustained serious injuries, necessitating an immediate surgical operation and the removal of one of the kidneys. No question is made concerning the nature or extent of her injuries, nor is it contended that the verdict and judgment is excessive if she was entitled to recovery at all.

She testified that she heard no signal from the truck and was not aware of its presence until she was struck by it; that the front end of the truck struck her. Edward Yoffee, a young boy, testified that he accompanied Naomi a part of the way from her home to Seventh street and saw her cross and go down toward the grocery. He was on roller skates, and had fallen near the side entrance to the Canfield Restaurant on the east side of Seventh street. He was sitting down, partially on a grating south of the side entrance, ad-

justing his skates, when he saw Naomi returning from the grocery. He testified that she walked off the pavement a short distance above the north end of the safety zone and looked both ways; that, when she reached the middle of the street and between the tracks of the railway company, she again looked both ways and started to run ahead when she was struck by the end of the bumper or the front end of the fender of the truck; that the truck went on to a garage near the alley before it stopped. He also testified that he saw no other vehicle going either way on the street at the time.

Robert C. Dyer, who was walking along the south side of Jefferson street and had reached the intersection at Seventh street, testified that the truck passed in front of him and across Jefferson; that it was going "awful" fast, fixing the speed at 25 or 30 miles per hour; that it did not slow down until after the accident; that he did not see the truck strike the child, but heard the noise of the impact and saw the child lying in the street. He testified that the truck stopped something like halfway to the alley or something like 30 feet from where the child was lying. He further testified that he saw no other vehicles coming or going on Seventh street and saw none on Jefferson street, and that he was in a position to have seen automobiles if they had been passing.

Immediately after the accident, the child was removed to the city hospital, where the operation was performed and where she remained for about a month. One of the physicians who attended her testified that she was bleeding profusely from the right side. He was asked to measure the height of the place from which the blood was issuing when she was standing. He made the measurement, and testified that it was from 32 to 34 inches. Practically all the other evidence for appellee relates to her injuries and to conditions arising therefrom.

Harned Layman testified that he was going north on Seventh street, and when he reached Jefferson, he made a stop on account of passing automobiles, and that before striking the child he had not put his truck into high gear, and was going about 15 miles per hour; that he did not see the child until she ran into the corner of the body of the truck, which is less than a foot in back of the cab in which he was sitting; that he

merely caught a glimpse of her before the impact. He testified that, after crossing Jefferson, he met two automobiles going in the opposite direction, and that the child ran out from behind one of them. Robert Layman, a distant relative of Harned Layman, who is employed by the Mengel Box Company and lives on Twenty-First street, testified that he and his wife had driven to a barbershop near the scene of the accident; that he let his wife out on the west side of Seventh street and then drove to Jefferson, turned around, and came back on the east side and parked just north of the alley on Seventh street; that he then walked around the back of the car to cross the street, but saw a truck approaching from the south about 150 feet away and also saw two automobiles going south on the opposite side, one of them near Jefferson and the other about even with the alley; that he saw a little girl on the opposite side wait for the first car to pass and run between the two automobiles and into the side of the truck; that she hit the door about even with the driver's seat, and the body of the truck where it extends out beyond the cab seemed to hit her in the back, and she turned around and rolled along the side of the truck. He and others saw the mayonnaise on the street near where the accident happened and opposite the side entrance to the Canfield Restaurant. Charles Pfeiffer and his brother William were coming out of the side entrance of the restaurant and saw the child lying on the street immediately after the accident and also saw the broken jar of mayonnaise. This was immediately in front of the side entrance. Charles Pfeiffer testified that in his estimation the truck stopped 15 or 20 feet below, but that it might have been farther, and William Pfeiffer testified that the truck stopped right at the side of the alley, and he estimated the distance at 65 or 75 feet. Harned Layman testified that the bumper of the truck was about 18 inches from the ground, the front end of the fender 23 inchces, and the corner of the body of the truck was 36 inches from the ground. Two photographs were introduced in evidence and are in the record, and it is agreed that they correctly reveal the surroundings as they were at the time except as to vehicles on the street.

With reference to the first ground assigned for reversal, it is asserted that the evidence for appellee wholly fails to make out a case against appellants, since

there is no reasonable proof that appellee was struck by the front end of the truck, but, on the contrary, the overwhelming weight of evidence shows that she ran into the side of the truck; that, even if there was a scintilla of evidence to take the case to the jury, a verdict based thereon must yield to the weight of the evidence. In support of this conclusion Myers v. Cassity, 209 Ky. 315, 272 S. W. 718, Knecht v. Buckshorn, 233 Ky. 329, 25 S. W. (2d) 727, and Runge v. Haller, 236 Ky. 423, 33 S. W. (2d) 317, are cited.

In the Cassity Case it appears that a pedestrian who saw an automobile approaching 300 yards away, and again when only 100 yards away, attempted to cross the road in its path without looking to see where it was. It was held that in such circumstances he was guilty of contributory negligence as a matter of law. It was further held, however, that it was not error to refuse defendant's motion for a peremptory instruction because there was some evidence that defendant might, under the last clear chance doctrine, have avoided the accident.

In the Knecht Case the evidence was held to show that the proximate cause of the injuries to a child was its act in running against an automobile and that the speed of the car played no part in causing the injuries, since the child would have been injured if the car had been moving at a slower rate of speed or standing still; that, where the proven negligence had no causal connection with the alleged injuries, there is a failure of evidence of proximate cause on which to base a verdict.

In the Runge Case a pedestrian desiring to cross the street passed between two automobiles that had stopped, and, when she emerged through the line, she did not look up the street. She was struck by an automobile which was almost upon her as she passed between the other automobiles and which she could have seen had she been looking. The driver swerved his automobile immediately, but was unable to avoid striking her. It was held that her negligence was the proximate cause of her injuries and that the last clear chance doctrine was not applicable because the evidence showed that, if the defendant had exercised proper care, he could not have avoided striking her after she stepped into his path.

Only a casual review of the evidence as hereinbefore recited will reveal that appellee's evidence presented an entirely different situation and set of circumstances from those shown in the cases referred to. According to the evidence for appellee, the driver had an unbroken view, and, if he had been exercising the lookout duty imposed on him by law, he could have seen the child crossing the street ahead of him. She and her playmate, Edward Yoffee, testified that they saw no other automobiles in the street and she did not emerge from a line of parked automobiles, since there was a safety zone where she started to cross the street, and they both testified positively that she was struck by the front end of the truck. Dyer and other witnesses testified that they saw no other automobiles passing along the street, and Dyer's evidence indicates clearly that Layman made no stop for Jefferson street but went ahead at a rate of 25 to 30 miles per hour, and there is evidence that this unusual rate of speed attracted his attention, since he watched the truck proceeding ahead and testified that it did not slacken its speed until after the accident. Counsel dwell on the improbability of the evidence of appellee and her playmate that there were no other automobiles passing since they did not see the truck until about the time it struck her; but, according to the evidence of Dyer, it was traveling at a rate of from about 36 to 44 feet per second, and therefore it can be understood how suddenly and unexpectedly it appeared upon the scene. It is true that the injuries on appellee's back were 32 to 34 inches from the ground when she was standing, and the bumper and fender of the truck were both much lower than this and the body of the truck only a little higher, which might indicate that, as claimed by Layman, she was struck by the body of the truck. But even Robert Layman did not testify that she first struck the body nor is this evidence nor these physical facts entirely inconsistent with the evidence of appellee and her companion. He said that she was struck by the end of the bumper and fender. This might have happened and still she might also have been struck by the body of the truck. Unquestionably the evidence was sufficient to take the case to the jury and to support their verdict.

After all, it was a question as to the credibility of the witnesses, and that, like the weight to be given their

evidence, was a matter for the determination of the jury, and, under the familiar rule which is so universally applied as to require no citation of authority, the court would not, in the circumstances relied on, be justified in disturbing the verdict as palpably and flagrantly against the weight of the evidence, the only ground on which such action would be warranted.

The court gave 5 instructions, and it would serve no good purpose and would unduly extend this opinion to set them out at length. Little need be said concerning the objections to the first instruction, since it follows substantially, if not in fact literally, the material parts of the instruction which this court said should be given in the event of another trial in the case of Metts' Adm'r v. Louisville Gas & Electric Co., 222 Ky. 551, 1 S. W. (2d) 985, where it was claimed that a child ran from behind another vehicle and into the side of a truck.

With respect to instruction No. 2, it is said that it follows the usual form of instructions on contributory negligence and absolves appellants from liability, even though the driver failed to perform the duties required by instruction No. 1 in the event of appellee's contributory negligence, but that it did not absolve appellants from liability in the event the jury placed liability upon them by reason of instruction No. 4. Except in the latter part, the instruction given follows practically the language of instruction A offered by the attorney for appellants, but, if the instruction was defective in the particular claimed by counsel, such defect was cured by instruction No. 5.

Instruction No. 4 in effect authorized a finding for appellee if the jury believed from the evidence that the truck was being driven faster than 7 miles an hour and that its speed was the direct and proximate cause of its striking and injuring appellee, unless the jury believed that, considering the traffic and use of the street at the time, the speed, although exceeding the rate indicated, was not unreasonable or improper driving, and in which event the jury would be governed by the other instructions.

Instruction No. 5 absolves appellants of liability, if the jury believed that appellee ran into the side of the truck or into its path so suddenly and so near there-

to that, even if the truck had been operated at a reasonable rate of speed and the driver had been performing the duties required of him by the first instruction, he could not, by the exercise of ordinary care and the use of the means at his command, have avoided injuring appellee. Instruction No. 4 is complained of because it assumes as a matter of law that the speed of the truck was fixed by section 2739g-51, paragraphs 1 and 5, Kentucky Statutes, which limits the speed of 1½ ton trucks passing through a closely built-up business portion of any city or town; it being urged that the evidence does not show that this was a closely built-up business section, but a number of witnesses testified that it was, and the photographs found in evidence are conclusive of that fact.

It is admitted that instruction No. 5 properly defines and submits the sudden appearance doctrine, but is urged that it is nullified by the sixth instruction, which submits the last clear chance theory. From an examination of these instructions we think that they fairly and properly submitted those issues to the jury, and, on the whole, it may be said that we seldom find a set of instructions in a complicated case which so clearly and properly present to the jury the issues made by pleading and proof.

Wherefore the judgment is affirmed.