Affirming.
Preston Leon Ballback, a boy nine years seven months of age, was struck and killed by a truck owned *Page 649 
and operated by the Boland-Maloney Lumber Company. In an action for damages against the Lumber Company by the administrator of the boy's estate, the jury returned a verdict for the defendant. A reversal of the judgment is sought on two grounds: (1) Errors in the instructions; and (2) insufficiency of the evidence to sustain the verdict.
The accident happened on East Gray Street in Louisville on June 27, 1946, about 3 o'clock in the afternoon. Appellee's truck, loaded with lumber, turned into East Gray Street and proceeded east on Gray Street, which is 36 feet wide from curb to curb. On each side of the street is a sidewalk 12 feet wide. The Ballback boy and three or four other boys of about the same age were lighting firecrackers or squibs, and about the time the truck entered Gray Street one of the boys tied a squib to an iron fence picket or post in front of the residence at 914 East Gray Street, and after lighting it he, the Ballback boy and probably a third boy backed into the street away from the expected explosion, and the Ballback boy was struck and knocked down by the truck. There is some conflict in the evidence as to whether he backed into the path of the truck or backed into its side. Allen Holmes, driver of the truck, testified that after he turned into Gray Street and had proceeded 20 or 30 feet he saw the children on the sidewalk and in the gutter on the south side of the street. None of them was in the street, and he did not know what they were doing. He sounded the horn, pulled the truck into the middle of the street, and proceeded east at a speed of ten or fifteen miles an hour. The boys remained on the sidewalk and in the gutter on the south side of the street until the cab of the truck passed them and he could no longer see them. The first notice he had of the accident was when one of the boys shouted to him to stop the truck, it had hit a child. He stopped and found the Ballback boy under the truck, his body immediately in front of the right rear wheel and his feet toward the south curb. The wheel had not passed over the boy's body, but had pinched and crushed his chest. There was a wound behind his left ear, and his skull was fractured. The right side of the truck was 12 feet from the south curb of the street when the accident happened. The plaintiff introduced as witnesses three boys, *Page 650 
who were present when the accident happened, and Charles W. Carter, who was riding in the cab of the truck on the right side of the driver. Carter saw the boys on the sidewalk after the truck entered Gray Street, and when the truck was about even with them he saw one of the boys step from the sidewalk into the gutter. In the words of the witness, "he was just about even with me when he stepped off, and then the view of the truck, you know, put him out of my sight." Joseph Lumakin, one of the boys playing with the firecrackers, testified that he was sitting on the rear bumper of an automobile parked on the south side of Gray Street, and that he saw the truck approaching from the west. The decedent and another boy, after lighting the firecracker tied to the fence post, backed across the sidewalk into the gutter, and decedent ran into the street with his head turned toward the firecracker. He ran into the side of the truck and fell in front of the right rear wheel. The other two boys testified on direct examination that they and the decedent were in front of the truck, but on cross-examination they said that the decedent backed into the street after the firecracker was lighted and was struck by the body of the truck back of the cab.
The appellant insists that the instructions are erroneous because they failed to define correctly the duties of the driver of an automobile where children are in or near the path of the vehicle. It is argued that the instructions prepared by this court in Metts' Adm'r v. Louisville Gas Electric Company, 222 Ky. 551, 1 S.W.2d 985, 988, and set out in Stanley on Instructions, section 109, should have been followed literally since the facts are very similar, but that the instructions given in the present case are contrary in several respects to the instructions directed to be given in the Metts case and therefore are erroneous. The instructions in the present case differ somewhat in phraseology from the instructions in the Metts case, but they are substantially the same. Instruction 1 (b) is criticized because it fails to place on the truck driver the duty of "avoiding the striking of the deceased infant." In the first paragraph of the instruction the jury were told that it was the duty of the driver "to so run and operate said truck, as not to cause it to come into collision with other persons or vehicles using the highway at that time and *Page 651 
place," and in the concluding part of the instruction the court told the jury that if they believed from the evidence that the driver was negligent in that he failed to perform any one or more of the duties required of him by the instructions and by reason of such negligence "his truck was caused to come into collision with the plaintiff's decedent, Preston Leon Ballback, and he thereby lost his life, then the law is for the plaintiff." This was equivalent to the term used in the instruction in the Metts case that it was the "duty of the driver to exercise ordinary care * * * to operate said car so as to avoid injury to him."
Appellant next criticizes Instruction 1 (c) because it limits the duty of the truck driver to that of keeping a lookout ahead for other persons, whereas such duty should have required a lookout for children because a higher degree of care is required towards a child than towards an adult. The term complained of is precisely the same as the term used in the approved instructions in the Metts case. In other portions of the instructions the additional care required where children are concerned is recognized.
Instruction 1 (d) is criticized because it left to the jury the question of necessity for sounding the horn, and appellant insists that such necessity was a question of law for the court. Several cases are cited in which it was held that it was the defendant's duty as a matter of law to sound the horn, but these are cases in which the pedestrian was in imminent peril. The evidence here as to the decedent's peril was conflicting. In fact, the great weight of the evidence is to the effect that he was not in a place of peril as the truck approached, and the question of necessity for sounding the horn was one for the jury to determine.
Appellant complains of Instruction No. 3 because, in defining the term "ordinary care," as applied to the driver of the truck, it said by the term ordinary care "is meant that degree of care usually exercised by ordinarily careful and prudent drivers of trucks like or similar to that shown by the evidence to avoid injury to a child the size and apparent age of plaintiff's decedent under circumstances like or similar to those shown by the evidence in this case." It is argued that the definition *Page 652 
of the term "ordinary care" should not have been limited to "that degree of care usually exercised by ordinarily careful and prudent drivers of trucks," but should have been that degree of care usually exercised by ordinarily careful and prudent persons. In Pryor's Adm'r v. Otter, 268 Ky. 602,105 S.W.2d 564, 569, this court prepared an instruction defining the term ordinary care to be given on the second trial of the case. The instruction read:
" 'Ordinary care,' as used in these instructions, in its application to the defendant means that degree of care which a person of ordinary, average prudence and skill, engaged in driving an automobile, usually exercises under circumstances like or similar to those proven in this case."
The instruction was not improper.
Instruction No. 3 defines ordinary care as applied to the decedent as "that degree of care usually exercised by ordinarily careful and prudent boys of his age, capacity and experience under circumstances like or similar to those shown by the evidence in this case." It is argued that the word "intelligence" should have been used in the definition instead of the word "capacity." The suggested substitution would have improved the definition, but, in view of the connection in which the criticized word was used, the jury could not have been misted. One of the definitions of the word "capacity" in Webster's International Dictionary is, "The power of receiving and holding ideas, knowledge, etc.; capability of understanding or feeling; also active mental power; mental ability." Definitions similar to the definition in Instruction No. 3 of the term ordinary care as applied to children have been approved. City of Louisville v. Lee, 157 Ky. 285,162 S.W. 1141; Stanley on Instructions, section 587. Brevity in statement and clarity of expression should be the court's aim in drafting instructions, but where they are inaptly drawn, as frequently happens, this court will not reverse the judgment unless there are errors or mistakes which affect the substantial rights of the complaining party. The purpose of an instruction is to furnish guidance to the jury in their deliberations and to aid them in arriving at a correct verdict. If the statements of law contained *Page 653 
in the instructions are substantially correct, they will not be condemned as prejudicial unless they are calculated to mislead the jury. Knight v. Silver Fleet Motor Express, 289 Ky. 661,159 S.W.2d 1002. We find nothing in the instructions before us which could have mislead the jury.
Counsel for appellant finally argue that the verdict is flagrantly against the evidence. If the argument is sound, then, under the rule announced in Nugent v. Nugent's Ex'r,281 Ky. 263, 135 S.W.2d 877, there should have been a directed verdict at the trial for the plaintiff, leaving to the jury only the assessment of the damages. We cannot believe counsel mean that the plaintiff was entitled to a directed verdict. They were not of that opinion when the case was tried. At the conclusion of the plaintiff's evidence and again at the conclusion of all the evidence, the defendant moved for a directed verdict in its favor, but no such motion was made by the plaintiff. The evidence on all crucial points was conflicting, and the case was clearly one for the jury.
Judgment is affirmed.