C. W. SMITH, d/b/a Smith Motor Company et al., Appellants,

v.

J. M. COLLINS, Administrator of Caleb Collins, Appellee.

Court of Appeals of Kentucky.

March 25, 1955.

Roy W. House, Manchester, for appellants.

Lyttle & White, Manchester, for appellee.

SIMS, Justice.

Plaintiff, J. M. Collins, as administrator of his son, Caleb Collins, brought this action to recover $25,000 damages to the estate of his decedent, whose death he aver-

red was caused by the negligence of C. W. Smith, doing business as Smith Motor Company, and two of his employees, Orville Smith and Clarence Walker. The answer denied negligence by the defendants and pleaded contributory negligence on the part of Caleb. The trial resulted in a verdict for plaintiff in the sum of $8,000, and the three defendants appeal.

Two grounds are relied upon for reversal: 1. A verdict should have been directed in behalf of defendants, (a) because there was no negligence shown on their part and (b) Caleb was guilty of contributory negligence as a matter of law; 2. the instructions are erroneous. It is apparent a brief résumé of the evidence is necessary.

The accident occurred around 11 o'clock on the night of August 27, 1952, on highway No. 421 in a congested area some 1,500 feet south of the city limits of Manchester. The black top of the highway was approximately 20 feet wide at the place of the accident. Caleb was driving his Chevrolet south at a high rate of speed, which according to the estimate of the witnesses varied from 50 to 70 miles per hour. It appears from the evidence he was racing with another car driven by Hugh Bob Jones.

C. W. Smith operated a garage on the east side of the highway at the scene of the accident. A 12-ton truck owned by one Congleton had just been repaired in the garage and as its battery was low, Orville Smith, a son and employee of C. W. Smith, drove the truck across the highway from the garage to park it on an incline off the west side of the highway so the truck could be started the next morning by letting it coast down the incline onto the highway.

When Orville got the truck on the west side of the highway its motor died. The battery was too weak to start the motor but was sufficient to illuminate the head, tail and marker lights. The truck stalled in the west lane and was facing south and parallel therewith. Orville called across the road to the garage for Clarence Walker to get a truck to pull the stalled vehicle off the highway. Walker backed his truck to the rear of the one that was stalled, hooked onto it with a chain and when he started to pull it, the chain broke. Seeing another truck coming north, Walker drove across the highway and parked his truck off the east side thereof with its headlights shining diagonally across the highway, toward Manchester.

Caleb, as just stated, was driving south at a rate of from 50 to 70 miles per hour and ran under the rear of the large stalled truck and was instantly killed. There was no sign of skid marks on the highway to indicate that he applied his brakes in an attempt to stop, nor was there evidence that he attempted to drive around the stalled vehicle. Apparently he drove into the stalled truck without seeing it.

The proof shows the stalled vehicle was on the highway only 3 or 4 minutes until the accident happened. Orville testified no flares were set as the lights on the stalled truck were burning and that he could remove it from the highway before he could set flares. Right after this crash a car driven by Hugh Bob Jones attempted to pass the stalled truck by driving on the west shoulder of the road. He was traveling 60 miles an hour and overturned, and is the boy some of the witnesses testified was racing with Caleb.

Walter Woods, a highway patrolman, testified Walker's truck was parked off the east side of the highway with its lights shining diagonally across the highway to the north; that had Caleb seen the stalled truck, he could not have passed to the left of it because "one truck was on one side of the road and one on the other".

The court is of the opinion it cannot be said as a matter of law defendants were free from negligence in driving this large, dimly-lighted truck on the highway when they knew its battery was too weak to start the vehicle. Nor do we think Caleb was guilty of contributory negligence as a matter of law, because fair-minded men might reach different conclu-

sions from this evidence although there is no contrariety in it. Padgett v. Brangan, 228 Ky. 440, 15 S.W.2d 277. However, we find the instructions are prejudicially erroneous to defendants.

The instructions given by the court were those offered by plaintiff. In setting out the duties of defendants, the first instruction told the jury it was their "duty to have and leave displayed on the rear of said truck a red light visible from the rear 500 feet away under ordinary atmospheric conditions, or if there was no light or same may have been incapacitated and not burning at said time and place mentioned in the evidence it was his duty to place no less than three flares or other signals capable of continuously producing three warning lights * * *". This instruction was given to meet the requirements of KRS 189.050(1) and 189.070(2).

It is noted that KRS 189.070(2) provides flares should be set during the period when lights on vehicles must be illuminated "Whenever any motor truck and its lighting equipment are disabled". True, this truck was disabled, but its lighting equipment, though dim and operated by a weak battery, can hardly be said to have been disabled. All witnesses but one testifying on the subject said the rear light could be seen for 500 feet, and that witness testified it could be seen for 100 yards.

The statute, KRS 189.450(1), does not prevent a vehicle which is disabled from stopping on the main traveled portion of the highway. Here, the court erroneously instructed the jury it was the absolute duty of the defendants to set flares if they had reasonable time to do so between the time the truck stalled and the time of the accident. In the circumstances presented by this record whether or not defendants had the duty of setting flares should have been left to the determination of the jury under an appropriate instruction. Compare Basham's Adm'x v. Witt, 289 Ky. 639, 159 S.W.2d 990.

Criticism is rightly made of the second instruction defining Caleb's duties. Since defendants offered an instruction placing on Caleb the duty to keep a lookout ahead, the court erred to their prejudice in not incorporating such a duty in its instructions. Whether or not Caleb was keeping a lookout is the very crux of this case. The jury logically could have reasoned that had Caleb kept a proper lookout the accident would not have happened, even though it believed defendants were negligent in taking the 12-ton truck on the highway with a weak battery.

Plaintiff argues there was no proof that Caleb was not maintaining a proper lookout. But the mere fact that he ran into this large truck which had at least one dim rear light on it visible for 100 yards without applying his brakes, or attempting to pull around to the left of the stalled vehicle, creates a strong presumption that he was not; and this presumption is so great as to make a jury issue on the question. Bohn v. Sams, 302 Ky. 63, 193 S.W.2d 459.

We cannot agree with defendants that the fact Caleb ran into the stalled truck created just as strong a presumption that his headlights did not meet the requirements of KRS 189.040(1), and the court erred in not imposing the duty on him in the second instruction to have headlights on his car sufficient to disclose substantial objects at least 350 feet as provided by this section. Nobody could testify as to whether or not Caleb was maintaining a proper lookout and we must depend upon inferences drawn from the proven facts to determine that question. But several persons saw the headlights on his car when it hit the truck, as well as immediately before the moment of the collision, and these persons were in a position to testify as to the sufficiency of his lights. The court properly refused to instruct on the sufficiency of Caleb's headlights since the evidence raised no issue thereon. Wilson v. Dalton's Adm'r, 311 Ky. 285, 223 S.W.2d 978, 981. On another trial if the evidence presents such an issue, and an instruction is offered thereon, it will be the

court's duty to properly instruct on this issue.

Defendants criticize the "ordinary care" instruction. Without determining whether the instruction as given was erroneous, to say the least it was awkward. As the judgment has to be reversed, we suggest the stereotyped form be used, "Ordinary care" as used in these instructions, means that degree of care which ordinarily prudent persons usually exercise under same or similar circumstances to those proven in this case. Stanley's Instructions to Juries. § 590, p. 759; Metts' Adm'r v. Louisville Gas & Electric Co., 222 Ky. 551, 1 S.W.2d 985.

The judgment is reversed for proceedings consistent with this opinion.