G. GILBERT LOWE AND WIFE, MARTHA L. LOWE,

*v.*

WILLIAM H. ROBIN et al.

(*Nashville*, December Term, 1957.)

Opinion filed February 6, 1958.

Howard F. Butler, Nashville, for appellants.

Morris Levine and Ned Lentz, Howard, Davis, Boult & Hunt, James I. Vance Berry, Nashville, for Globe Indemnity Co., appellee.

Mr. Justice Prewitt delivered the opinion of the Court.

The present bill was filed by the complainants G. Gilbert Lowe and wife to recover of the defendant, William H. Robin, as principal, and the Globe Indemnity Company, surety on his Notary Public bond, the sum of $10,381.90, this sum representing the amount heretofore ordered paid by the complainants to J. Douglas Wright and wife, and also certain counsel fees and court costs.

The basis of the present suit is the cause of *Lowe v. Wright*, Tenn.App., 292 S.W.2d 413, opinion of Court of Appeals, Middle Division, in which we have heretofore denied *certiorari.*

There was a demurrer filed to the present bill and sustained by the Chancellor.

In order to understand the problem here it becomes necessary to give a history of the case and the facts surrounding the record in the above reported case.

In the reported case referred to, complainants, G. Gilbert Lowe et al., filed their bill against J. Douglas Wright et al., seeking to cancel and remove as a cloud on their title a deed to 3.74 acres of land in Davidson County for a purported consideration of $10,000. The ground of relief was that the deed was a forgery.

The defendants in that cause, to wit, J. Douglas Wright and wife denied that the deed was a forgery and claimed they had bought the land in good faith through the agent of Lowe, E. W. Parrish, for $10,000, and had paid for it by three checks, a check to him for $1,000 as earnest money, a check to him for $100 for a title policy and a check of $8,900 to complainants in that suit; and that the said agent had delivered to defendants a deed which appeared to have been properly signed and acknowledged by complainants, Lowe before Robin, a Notary Public.

It seems that the Lowes, sometime before the transaction in controversy, bought about 70 acres of land in Davidson County. About 40 acres of this land was divided into lots of about one acre each and on it is what is known as the corner lot of 3.74 acres.

Complainants live near Henderson, in Chester County, Tennessee, but frequently came to Nashville and to this subdivision. They seemed to have trusted this so-called agent, Parrish, and he told them he knew a Notary

Public, who knew the signatures of each of them and it was not necessary for them to go before the notary to acknowledge the deeds.

It seems from time to time the agent would have one or the other of them sign the names of both of them to the deeds, have the notary public affix his seal and certificate to them in proper form, deliver them to the purchasers, receive the purchase money, and later account to complainants.

The record shows that the complainants were well educated people.

It seems that this man Parrish was often delinquent in his payments of the sums due complainants from these sales. In April, 1953, he had delivered their deeds and closed sales of three lots, but had not paid them the proceeds. He owed them $1,150.85 on each of these lots, or the total of $3,452.55.

It seems the complainants were pressing him for payment and on April 27, 1953, Mrs. Lowe met Parrish at a bank in Nashville, and he handed her $1,000 in money, and she got a cashier's check for that amount; and that on May 1, 1953, he delivered to complainants the cashier's check for $8,900 under the following circumstances:

On April 1, 1953, Wright saw Parrish's "for sale" sign on this 3.74 acre lot and got in touch with Parrish. It seems that Wright offered $8,500 for this lot but Parrish said this offer was not enough and he would not submit it to the Lowes. Some three weeks later Parrish told Wright he would sell this lot for $10,000 cash. Wright agreed and Parrish had him sign a contract and he gave Parrish a check for $1,000 as earnest money.

On April 30, 1953, Parrish had Wright meet him at the First American National Bank, Melrose Branch, where he delivered the deed, and Wright gave him a check for $100 for the title policy and a check to complainants for $8,900 marked: ''In full payment for lot, corner Old Hickory Blvd. and Dickerson Road.'' Parrish then said the Lowes would not take a personal check but required a cashier's check. Wright asked the teller to put this same notation on the cashier's check, but left before the check was completed. It did not bear the notation, but was payable to ''G. Gilbert Lowe & Martha Lowe,'' dated May 1, 1953, for $8,900.

On May 1, 1953, Parrish brought this $8,900 cashier's check to Lowes' home, told them that he had just closed a deal in Shelbyville, and the proceeds of this check payable to them, belonged to him; that the person issuing the check knew he owed them and wanted them to get their money out of it and made it payable to them for that reason.

Parrish and Lowe went to the First State Bank in Henderson, and Lowe deposited this $8,900 cashier's check to the joint account of himself and Mrs. Lowe in that bank. Deducting $2,452.55, as the amount Parrish owed them, Lowe had the bank issue to Parrish a cashier's check for $6,000 and gave him $447.45 in money.

It thus appears that Parrish negotiated a contract for them to sell this land to the Wrights; that he received the purchase price in the form of two checks to himself and a check to them for $8,900, which they received in the form of a cashier's check, and that he delivered a deed for them conveying this land to the purchasers, the Wrights.

The complainants complained that Parrish had no authority to act as agent for them in any part of this transaction; that they did not sign their names to this deed or authorize him to negotiate any contract to sell this land to the Wrights, or to receive any of the purchase price.

To authorize an agent to execute a deed in the name of another as his principal, T.C.A. Section 64-503, the authority must be by deed or by writing of equal formality with a deed, *Cain v. Heard,* 41 Tenn. 163, but the authority of an agent to contract to sell land in the name of his principal need not be in writing. *Texas Co. v. Aycock,* 190 Tenn. 16, 277 S.W.2d 41.

There was no proof of any writing authorizing Parrish, as agent, to execute the deed for the Lowes, and the proof shows that he had no such authority.

It further appears that at the time of the taking of the proof in this cause Parrish had been convicted and was serving a term in the State Prison.

From the whole record and under all of the circumstances, we conclude that the Lowes employed Parrish as their real estate broker and gave him very broad and general authority to sell not only the 45 lots in this subdivision, but also this particular lot in the same area; and that, as such agent, he negotiated this contract with the Wrights under circumstances more or less similar to those in his sales of those eleven lots, which sales complainants afterwards ratified.

It is true that the $1,000 earnest money check was payable to Parrish, and it appears that Parrish paid this $1,000 to Mrs. Lowe on his indebtedness to them.

Now, we come to what we think is the determinative cross-roads in this present litigation.

It is to be borne in mind that the cashier's check for $8,900 was payable to them and they actually received its proceeds—that is, they indorsed and deposited it to their joint account in the bank at Henderson.

It is true they say that Parrish told them their cashier's check to them was his, representing a deal he had made in Shelbyville, and that they accepted this story without question, and withdrew from their account and gave him all of the $8,900 except what he said he owed them, and when they did this, they knew he had been wrongfully withholding their funds from his sales of the lots, and they had suspected him of forging one or more of those deeds.

The Court of Appeals, in the reported case referred to, found that after they had received this cashier's check payable to themselves for $8,900, and had deposited it to their account, after they had thus received this money, their giving of any part of it to Parrish was, in its opinion, due to no fault of Wright, or of cross-defendant Bank, but solely to their own fault and culpable negligence, and having thus parted with the proceeds of this sale, under the circumstances, complainants here are in no position to repudiate it and ask relief against it in a court of equity, without first restoring what they received.

So the Court of Appeals affirmed the action of the Chancellor ordering the Lowes to restore this $8,900, to Wright before a decree would be entered declaring the deed to the 3.74 acres to be a forgery.

This purchase money has been restored to the Wrights.

Now, the present suit grows out of the case reported in which we denied *certiorari* and the complainants Lowe, in this case, sue the Notary and the Surety on his bond for negligence.

■ Now, it is true that the Notary Public, Robin, was negligent in taking this acknowledgment. It was his duty as notary, when taking the acknowledgment of a person not well known to him, to exercise reasonable care to prevent imposition, and not having done this causing damages to person so relying. *Figuers v. Fly,* 137 Tenn. 358, 193 S.W. 117; *State ex rel. First Trust & Savings Bank v. Easley,* 176 Tenn. 185, 140 S.W.2d 149.

The Court of Appeals then found, and we agree, that Robin's own testimony shows that he failed to exercise ordinary care to prevent imposition by Parrish.

■ In the present suit, as heretofore stated, the Chancellor sustained the demurrer to the bill. We find no error in this as we think that the proximate cause of the loss in this cause must be laid to the Lowes, who after they had received the money from Parrish, took it to the bank and had it deposited in their own names, and then turned the money over to Parrish.

This being our view of the case we find no error in the decree of the Chancellor sustaining the demurrer of the defendants and it is affirmed.