**Margaret BEAZLEY, Plaintiff and Counter–Defendant,**

v.

**Robert TURGEON and Elaine Turgeon, Defendants, Counter–Plaintiffs and Third–Party Plaintiffs,**

v.

**Donna BOLCH and Lawyers Surety Company, Third–Party Defendants.**

**Donna BOLCH, Plaintiff and Counter–Defendant,**

v.

**Margaret BEAZLEY, Defendant, Counter–Plaintiff and Third–Party Plaintiff,**

v.

**LAWYERS SURETY COMPANY, Third–Party Defendant.**

Court of Appeals of Tennessee, Western Section, at Nashville.

June 8, 1988.

Application for Permission to Appeal Denied by Supreme Court May 1, 1989.

**54**

William B. Hubbard, Littleton, Weed & Hubbard, Nashville, for appellant, Margaret Beazley.

Robert S. Patterson and Russell C. Gallagher, Nashville, for appellees, Robert and Elaine Turgeon.

Richard D. Taylor, Adams, Taylor, Philbin, Pigue & Marchetti, Nashville, for counter-defendants, Donna Bolch and Lawyers Surety Co.

TOMLIN, Presiding Judge, Western Section.

Margaret Beazley (hereafter "plaintiff") has appealed from a decree of the Chancery Court of Davidson County dismissing her complaint in the first captioned case against Robert and Elaine Turgeon (hereafter "defendants") as well as dismissing her counter-complaint in the second captioned case against Donna L. Bolch (hereafter "Bolch") and a third-party complaint against her surety, Lawyers Surety Corporation (hereafter "Lawyers Surety"). This series of suits began with a suit by plaintiff against defendants seeking to have declared null and void a deed of trust executed by plaintiff to defendants to secure a $40,000 note. The said deed of trust gave a first lien on plaintiff's property as security for said note. Defendants filed a counter-complaint against plaintiff seeking to have an equitable lien declared against plaintiff's property. Defendants also filed a third-party complaint against Bolch and her bonding company, Lawyers Surety, for falsely acknowledging the signature of plaintiff on the deed of trust. Bolch filed a separate suit against plaintiff seeking indemnity for any judgment that she or her bonding company might be required to pay to the defendants. In turn, plaintiff filed a counter-claim against Bolch for damages resulting from Bolch's false acknowledgment. Lawyers Surety was subsequently brought in as a third-party defendant in plaintiff's suit against Bolch. These two suits were consolidated for purposes of trial.

This is the second appeal in this case but the first appeal from a July, 1987 judgment on the merits. The Middle Section of this Court dismissed plaintiff's appeal because of a non-final judgment. At the end of plaintiff's proof the chancellor granted defendants' motion to dismiss plaintiff's suit. In addition, the chancellor sustained the counter-complaint of the defendants and impressed an equitable lien in their favor on plaintiff's property. All other actions and counter-actions were dismissed.

On appeal, the Middle Section held that the decree appealed from was not a final judgment in that "it does not state the amount and nature of the debt secured by the equitable lien and that it does not dispose of the actions against Lawyers Surety Company/Lawyers Surety Corporation." The Court remanded the case to the trial court "for such further proceedings as the Trial court may order leading to the entry of a final, appealable judgment, and, it is to be hoped, more detailed findings of fact and conclusions of law on the issues presented by the pleadings."

Upon remand the chancellor heard no further proof. Instead, he entered an "amended judgment," which reads in part as follows:

> The confusion of the Court of Appeals seems to arise from that part of this Court's September 3, 1986 judgment which granted an equitable lien on Margaret Beazley's property in favor of Robert and Elaine Turgeon. This Court should not have granted that relief and did not intend to do so. Margaret Beazley did not prevail in her claim to have the deed of trust voided. Therefore, there is no need for the Turgeons to have an equitable lien; they are secured by the deed of trust.

The chancellor proceeded to dismiss all complaints, counter-complaints and third-party complaints, leaving the parties as they stood initially, but finding that the deed of trust held by the defendants on plaintiff's property was valid. Only the original plaintiff has appealed from the action of the chancellor. She presents the following issues for this Court's consideration and resolution: (1) whether the deed of trust is void because of the false acknowl-

edgment of the notary public; (2) whether the deed of trust is void for failure to comply with the requirements of the statute of frauds; (3) whether plaintiff is equitably estopped from asserting the statute of frauds; (4) whether the plaintiff ratified the transaction by her actions; and (5) whether the chancellor erred in dismissing plaintiff's suit against Bolch and Lawyers Surety. We resolve these issues in favor of plaintiff, reverse the chancellor and remand for further proceedings in accordance with this opinion.

In late 1983 as a result of the closing of her father's business, plaintiff found herself in financial difficulty. Her brother, Don Dozier, was a real estate agent in Nashville. Plaintiff and her brother were quite close. She relied upon him for advice from time to time. In addition, they would loan money to one another when needed. Plaintiff contacted her brother and inquired if he might borrow some money for her until she could sell her home, which she valued at $160,000 to $180,000. Plaintiff heard nothing until February, 1984 when her brother informed her that he might be able to obtain some money for her. It seems that Christine Dozier, Don Dozier's wife, and one Peggy White were co-owners of Carriage Lane Interiors, a furniture store that too was experiencing financial difficulties. Mrs. Dozier and Ms. White were in dire need of $40,000 for a short period of time to finance a liquidation sale. Don Dozier asked plaintiff if she would be willing to put up her home as collateral for a ninety-day loan for this purpose. She agreed.

Following this conversation, plaintiff provided Don Dozier a copy of the original deed to her home. He caused a title examination and an appraisal to be made of the residence. However, shortly after an appraisal was made of plaintiff's residence, Mrs. Dozier advised plaintiff to disregard what had transpired because the loan had fallen through. A short time thereafter, Mrs. Dozier and Ms. White obtained a $40,000 loan from the non-resident defendants through an agent named Art Snyder. This loan was for a term of one hundred eighty-one days and was to be secured by a deed

of trust on plaintiff's home. Mrs. Dozier and Ms. White had their attorney prepare a note and agreement and a deed of trust to secure said note by means of a first lien on plaintiff's property. The note and agreement obligated Mrs. Dozier and Ms. White to repay the $40,000 loan to defendants in one hundred eighty-one days. It also committed plaintiff to give defendants a first deed of trust on her residence at 1040 Battery Lane to secure the payment of the loan. Plaintiff was unaware of the negotiation of this loan.

The execution of the note and trust deed took place at the Dozier residence on the night of February 16, 1984 under rather mysterious and unusual circumstances. Donna Bolch, a court reporter and notary public and a personal friend of Peggy White, was contacted by her on that evening. Ms. White advised Ms. Bolch that she needed her to notarize some papers and that she was in a big hurry. At Ms. White's request, Ms. Bolch drove her over to the Dozier residence. At that time it was determined that the "papers" had not been picked up from the attorney. Mrs. Dozier asked Ms. Bolch to drive her to the residence of Charles Cornelius, Jr., a Nashville attorney, who had prepared the trust deed and note and had placed them in his mailbox to be picked up. They did so and returned to the Dozier residence.

By that time defendant's agent, Art Snyder, had arrived. Earlier, Mrs. Dozier had appeared to be calling plaintiff on the telephone, ostensibly to arrange for her to sign the papers. When Mrs. Dozier and Ms. Bolch returned with the documents, Ms. White advised them that she had talked to plaintiff, and that plaintiff had advised her that she was not coming over and for Ms. White to go ahead and sign the papers. This was outside the presence of defendants' agent, Art Snyder. Thereupon, Ms. White took the papers and asked Ms. Bolch to take her for a drive in her car so that the documents might be signed and notarized. According to the testimony of Ms. Bolch, this was for the stated purpose of concealing from defendants' agent the fact that plaintiff was not going to execute the doc-

uments. Ms. White and Ms. Bolch drove to the end of the block and stopped the car. Ms. White proceeded to sign Margaret Beazley's name to both the note and the deed of trust. Ms. Bolch then proceeded to notarize the execution of the deed of trust by "Margaret Beazley," when in reality Peggy White had signed Mrs. Beazley's name. The acknowledgment was a standard Tennessee form of acknowledgment which stated in effect that the person executing the document personally appeared before the notary public, and that the notary public was personally acquainted with the person signing the document. It is an obvious fact that the plaintiff, Margaret Beazley, did not sign the trust deed, nor was she personally present with Donna Bolch in her car on that night. Donna Bolch did not know plaintiff and plaintiff did not know Donna Bolch.

When Ms. White and Bolch returned to the Dozier home, the executed papers apparently were turned over to Art Snyder. Don Dozier testified that Peggy White told him that they went to plaintiff's house and got plaintiff to sign the papers. This, of course, was untrue.

In March, 1984, plaintiff received a check in the amount of $5,000 signed by Peggy White and drawn on the C & W Company. The check was delivered by mail with no cover letter of explanation. Plaintiff, a woman of limited business experience, presumed that Ms. White and Mrs. Dozier had obtained a loan but knew no other details. It should be noted that as of this time plaintiff had never signed any documents, nor had any documents pertaining to a loan been presented to her.

Plaintiff first learned of the infamous trust deed and note when she was contacted by phone by Art Snyder on behalf of defendants in September, 1984. He sought to persuade plaintiff to sign a renewal note for an additional six months. When plaintiff refused to do so, Snyder told her of the mortgage and threatened her with foreclosure.

Very soon thereafter a meeting took place between plaintiff, her brother Don Dozier, and Art Snyder, who brought with him the original trust deed and note. Plaintiff testified that she had never seen the document prior to that night. Don Dozier testified that he also saw it for the first time that night. After examining the note and trust deed, Don Dozier stated that he recognized that something had gone wrong. He stated that he could tell from this examination that the same person who signed Peggy White's name also signed the name of plaintiff. Don Dozier had plaintiff sign her name some three or four times that night in an effort to convince Art Snyder that the signature of plaintiff on the documents was not that of the plaintiff. Plaintiff and her brother stated that they convinced Snyder that plaintiff had not signed the documents in question.

Ms. Bolch testified that in October, 1984 she was asked by Peggy White to notarize another deed of trust on which Ms. White would be forging plaintiff's name. This time Ms. Bolch declined. She stated that she refused because she had learned by that time that there was a conflict between Ms. White and Mrs. Dozier.

As part of her testimony plaintiff reiterated that she had never authorized anyone to sign her name to the trust deed and note, that she was only acquainted with Peggy White, and that she neither knew the defendants nor had ever met or talked to them. She met defendants' agent, Art Snyder, for the first time in September, 1984.

Following the testimony of plaintiff, Donna Bolch and Don Dozier, the chancellor granted defendants' motion to dismiss plaintiff's suit. In the former decree of the chancellor plaintiff's complaint was dismissed but the chancellor gave defendants relief by imposing an equitable lien on plaintiff's property. In that regard he made certain findings of fact. On remand the chancellor reversed himself insofar as imposition of an equitable lien and simply held that the controverted trust deed was a valid first lien upon plaintiff's property in favor of defendants. This is the paramount issue with which we must first deal. In so doing we feel that we must first review the record *de novo* without a pre-

sumption of correctness in that the findings made by the chancellor in the former decree related to the imposition of the equitable lien.

## I. THE STATUTE OF FRAUDS.

■ It is contended by plaintiff, and we so find, that the deed of trust here relied upon by defendants is in violation of the Statute of Frauds codified as T.C.A. § 29-2-101, which reads in part as follows:

**Writing required for action.**—No action shall be brought:

. . . .

(4) Upon any contact for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one (1) year;

. . . .

unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized.

In order to assist Mrs. Dozier and Ms. White in obtaining a $40,000 loan for ninety days, plaintiff agreed that her home could be used as collateral. Plaintiff further conceded that she presumed the loan had been made to Mrs. Dozier and Ms. White inasmuch as they sent her $5,000. Plaintiff testified that she never agreed to sign a deed of trust nor did she know a deed of trust had been placed against her property until approached by defendant's agent.

In *Lambert v. Home Federal Savings and Loan Association,* 481 S.W.2d 770, 772–73 (Tenn.1972), our Supreme Court stated as follows:

A mortgage, or a deed of trust, in its legal aspect is a conveyance of an estate or an interest in land and as such within the meaning of the Statute of Frauds. A mortgage or deed of trust of land cannot be made by parol. . . .

Restatement, Contracts, § 195, declares that any interest which the law regards as real estate is within the statute.

And in 76 A.L.R. 574, 579; 49 Am.Jur. Statute of Frauds, § 199 at 526, it is held that an oral contract to mortgage or to give security on real estate is unenforceable.

In dismissing plaintiff's complaint, the chancellor stated:

[T]he plaintiff, Ms. Beazley, acknowledges that she wanted done what was done. She wanted a forty thousand dollar loan. She wanted her property used as collateral for the loan. She wanted part of the money. She knew that an appraisal had been done of the house. So, everything happened that she wanted to happen.

Concerning what the proof reflects that plaintiff *did,* it shows that she merely agreed with the soon-to-be debtors that she would permit her property to be used as collateral for a loan to them. This certainly does not satisfy the statute of frauds.

Defendants contend that the memorandum requirement of the statute is met by the $5,000 check received by plaintiff from Dozier and White. Plaintiff admits cashing the check. While the check is not evidence before us, it is presumed and argued that plaintiff endorsed the check and cashed it, thus satisfying the "memorandum" requirement of the Statute. However, defendants do not contend that there was any language on the check to reflect the terms of the agreement they ostensibly had with the plaintiff. In *Southern Industrial Banking Corp. v. Delta Properties, Inc.,* 542 S.W.2d 815 (Tenn.1976), our Supreme Court held that checks totaling the amount of the alleged loan payable to plaintiff—the party to be charged—signed by the lender—defendant—without more, did not satisfy the test of a "memorandum in writing." Certainly, a check from the debtor to the party being charged with the lien—the plaintiff—with nothing more, would not constitute a memorandum that would satisfy the test.

The deed of trust by which it is claimed that plaintiff conveyed an interest in real property to defendants is the critical instrument. Under the controlling decisions of this state, the plaintiff, as the owner of the interest in the real estate to be conveyed, is

the party to be charged, and her signature on the appropriate memorandum is indispensable. *Id.* at 818.

Applying the party to be charged rule, the record before us reveals first, that the party to be charged did not sign the deed of trust. The record reflects that Peggy White signed the name of the plaintiff to the trust deed. Plaintiff testified that she did not authorize Ms. White to sign her name to the trust deed. In cross examining plaintiff, opposing counsel produced no written memorandum by which Ms. White was authorized to sign the trust deed for plaintiff. Both the chancellor and the Middle Section of this Court have declared the signature of the plaintiff to the trust deed to be a forgery. We are neither in a position nor are we inclined to go behind the holding of these two courts. Finally, as stated by our Supreme Court in *Lowe v. Robin*, 203 Tenn. 105, 310 S.W.2d 161 (1958), "[t]o authorize an agent to execute a deed in the name of another as his principal, ... the authority must be by deed or by writing of equal formality with a deed...." *Id.* at 110, 310 S.W.2d at 163. As already stated, no such writing was produced.

Even if the above-stated grounds were insufficient to hold that failure to comply with the Statute of Frauds had been demonstrated, there is yet another reason for so holding. The note executed by Mrs. Dozier and Ms. White provided for a $40,000 loan for a term of one hundred eighty-one days. On the other hand, the oral agreement made by plaintiff to her brother for Mrs. Dozier and Ms. White called for a loan term of only ninety days. In *Southern Industrial Banking Corp. v. Delta Properties*, the bearer thought that the security for the loan would be 3.67 acres, but defendant-lender was requiring a lien on 4.04 acres. On what might be considered a seemingly irrelevant discrepancy, the Court stated:

> Furthermore, the disputed issue of whether the security for the loan was to be 4.04 acres or 3.67 acres illustrates the validity of the purpose of the statute of frauds, to avoid the inevitable duel of different versions of the spoken word,

unsettling and legally intolerable where real property is involved.

*Id.* at 819.

## II. EQUITABLE ESTOPPEL.

■ Defendants contend that plaintiff is equitably estopped from relying upon the Statute of Frauds under the facts of this case. Equitable estoppel is an exception to the Statute of Frauds. Our courts have defined it as follows, quoting 3 *Pomeroy's Equity Jurisprudence* § 804, p. 189:

> "Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy."

*Church of Christ v. McDonald*, 180 Tenn. 86, 95, 171 S.W.2d 817, 821 (1943).

In *Metropolitan Development & Housing Agency v. South Central Bell Telephone Co.*, 562 S.W.2d 438 (Tenn.App. 1977), the *McDonald* concept of equitable estoppel was elaborated upon:

> While equitable estoppel as expounded in *McDonald* does not require fraudulent intent, it does require at least some voluntary action, such as intentional or negligent concealment of facts, which leads the other party to rely to his detriment by changing his position for the worse. Further, like all equitable doctrines, equitable estoppel is to be used to achieve fairness in dealings between parties.

*Id.* at 445.

Defendants' reliance upon equitable estoppel is without merit. The facts in this record do not establish the requisite elements of equitable estoppel against plaintiff.

## III. RATIFICATION BY PLAINTIFF.

■ Defendants also contend that plaintiff cannot avail herself of the Statute of

Frauds by virtue of having ratified the transaction. In support of this argument they contend that she expressed a willingness to allow her property to be pledged as collateral for the loan that was made and subsequently admitted that the transaction was carried out. Defendants assert that by accepting the $5,000 check, plaintiff "ratified" the pledging of her property to secure Mrs. Dozier's and Ms. White's loan. Defendants' reliance upon the doctrine of ratification is misplaced. Ratification is defined as follows:

> Ratification is a matter of intention; its existence is a question of fact, and in order that there be a ratification, there must be a voluntary assumption of the unauthorized act, either on full information or on less than full information if undertaken deliberately in disregard of the fact that all knowledge of the transaction available has not been obtained.

28 Am.Jur.2d *Estoppel and Waiver* § 31 (1966).

█ Under the facts of the case before us, it cannot be said that plaintiff "ratified" the transactions because the transactions in and of themselves are totally different. Agreeing to allow her property to serve as collateral for a ninety-day loan is totally different from allowing her property to serve as collateral for a one hundred and eighty-one-day loan. Plaintiff never agreed to the specific transaction that was fraudulently thrust upon her by Peggy White and Ms. Bolch. In this state the doctrine of ratification does not apply to forged instruments, such as the trust deed in the case before us. In *Lowe v. Wright,* 40 Tenn.App. 525, 292 S.W.2d 413 (1956), plaintiffs' agent sold a lot to defendant. Plaintiffs' agent gave defendant a warranty deed bearing the forged signatures of plaintiffs, receiving in exchange therefor defendant's cashier's check in the amount of $8,900. While the check was made payable to plaintiffs, their agent persuaded them that the proceeds of the check belonged to him. Plaintiffs deposited the check in their bank account and wrote a check to the agent for the bulk of the proceeds thereof. In holding the trust

deed invalid, the Middle Section of this Court stated:

> There was no proof of any writing authorizing Parrish as agent to execute the deed for the Lowes, and the proof was that he had no such authority. It seems that at the time of the taking of the proof in this case Parrish had been convicted and imprisoned and was not available as a witness. The Lowes said he had no such authority and that the deed was a forgery. *Being a forgery, it was, as they contend, utterly void and passed no title to the Wrights.* [emphasis added]

*Id.* at 534, 292 S.W.2d at 417.

Under the evidence as presented and as found by the chancellor and the Middle Section of this Court, the trust deed given to defendants was a forgery and became null and void upon its execution.

## IV. LIABILITY OF DONNA BOLCH AND LAWYERS SURETY.

█ The record reveals that Donna Bolch is an experienced court reporter. An integral part of her services calls for her to be a notary public. Tennessee Jurisprudence has this to say about notaries public:

> A notary is an officer holding a public office known to the common law so his acts are presumed correct. And third persons may rely on his certificate of acknowledgment relied on with confidence by men of business. Those buying or taking security by way of liens on real estate ought not to be required to look with suspicion on such a certificate or compelled to make proof of its recital as to the notary's personal acquaintance.

20 Tenn.Juris., *Notary Public,* § 1 (1985).

In layman's terms, a notary public's certificate means a great deal more than the "Good Housekeeping Seal of Approval." A notary's acknowledgment says to the world that the execution of the instrument was carried out according to law. A notary public takes an oath of office when a commission is issued or renewed. Obviously, Ms. Bolch knew her responsibilities as a notary. Ms. Bolch was readily aware of the fact that Margaret Beazley was not executing the trust deed. She was readily aware of the clandestine manner in which

Peggy White wanted to have her forgery of plaintiff's signature acknowledged and of her desire to conceal this fraud from the defendants. While there are or can be occasions for a person to execute an instrument for another, in such a situation the acknowledgment should reflect that "A" signs on behalf of "B" by virtue of a power of attorney or as an attorney at law.

Had Ms. Bolch performed in a manner as her oath required, it would have been necessary for plaintiff to appear personally before her and to acknowledge that she executed the deed of trust. We find that by virtue of Ms. Bolch's own testimony she failed to exercise ordinary and reasonable care to prevent the forgery by Ms. White and thus was guilty of negligence in taking this acknowledgment.

Having so found, we resolve these cases as follows: The decree of the chancellor dismissing plaintiff's suit and finding that the deed of trust herein is valid is reversed. We hold that under the proof, plaintiff's suit for declaratory judgment to set aside the deed of trust as being null and void is sustained, and the deed of trust is hereby declared to be null and void.

In the suits by plaintiff Beazley and defendant Turgeon against Donna Bolch and Lawyers Surety Corporation, we hold that by virtue of the testimony of Bolch herself she is guilty of negligence that would be the proximate cause of such damages as the respective plaintiffs might be able to prove, and these cases are remanded for a further hearing as to the amount of damages, if any, she and her surety might be obliged to pay. The action of the chancellor in dismissing these suits is reversed.

As for the third-party complaint of *Donna Bolch v. Margaret Beazley* for indemnity arising from any damages Bolch might be obliged to pay defendants Turgeon, this Court is of the opinion that based upon the testimony of Bolch herself, she is not entitled to any indemnity in the event she is found to be obligated to defendants Turgeon. Accordingly, dismissal of this action by the chancellor is affirmed, as well as Ms. Bolch's claim for expenses and attorney fees.

Finally, the dismissal of the defendants' counterclaim seeking to establish an eq-uitable lien is reversed and remanded for a new trial on the merits, with the defendants to be afforded ample opportunity to present what proof they might have to support their claim, if any. Costs in this cause are taxed three-fourths to Donna Bolch and one-fourth to the defendants in the original action, for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.