FILED
02/23/2017
Clerk of the
Appellate Courts



IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 18, 2017 Session

## LARRY D. PATTON, ET AL. v. SHELBY COUNTY GOVERNMENT, ET AL.

### Direct Appeal from the Circuit Court for Shelby County
No. CT-002153-15     Felicia Corbin Johnson, Judge

---

### No. W2016-00970-COA-R3-CV

---

In 2014, the plaintiffs filed this claim against several defendants pursuant to the Tennessee Governmental Tort Liability Act due to the recording of a forged deed in 2009. The circuit court dismissed the lawsuit based on the GTLA's one-year statute of limitations. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and ARNOLD B. GOLDIN, JJ., joined.

Larry D. Patton, Memphis, Tennessee, *Pro Se.*

Mildred H. Patton, Memphis, Tennessee, *Pro Se.*

John Barnett Turner, Jr., and Virginia Patterson Bozeman, Memphis, Tennessee, for the appellees, Shelby County Government, Shelby County Reigster, Emma Summerville, and Christina Morgan.

### OPINION

### I. FACTS & PROCEDURAL HISTORY

On October 8, 2014, Mildred H. Patton and her son Larry D. Patton (collectively, "Plaintiffs") filed a pro se "Petition for Judicial Review for Forgery, Fraud[ulent] Conveyance and Negligence with Malice" in the chancery court of Shelby County. The complaint named as defendants the Shelby County Government, the Shelby County Register of Deeds, Shelby County Government employee and notary public Emma Summerville, and the deed examiner at the Shelby County Register of Deeds office,

Christina Morgan (collectively, "Defendants"). The complaint set forth a claim pursuant to the Tennessee Governmental Tort Liability Act ("GTLA"), Tenn. Code Ann. § 29-20-101, et seq. According to the complaint, on June 6, 2009, defendant Emma Summerville notarized a forged and fraudulent quitclaim deed to property located at 2087 Benton Street in Memphis that was owned by Mildred Patton and her other son, Crawford Patton. The Benton Street property was vacant at the time, as Larry Patton and Crawford Patton were both living with their mother Mildred at another home in Memphis. The forged quitclaim deed purportedly conveyed the Benton Street property to Jerry L. Harris. The Register of Deeds office rejected the deed because it was incomplete and sent a letter to the Benton Street address stating that the deed lacked necessary information. Upon receipt of the letter, Larry Patton called the Register's office and spoke with deed examiner Christina Morgan. He explained that the Patton family did not know a Jerry Harris and had not conveyed the Benton Street property to anyone, nor did they intend to do so. Allegedly, Ms. Morgan said that she would call the Pattons "if anything else [came] up."

According to the October 8, 2014 complaint, on June 23, 2009, defendant Emma Summerville notarized a second forged and fraudulent quitclaim deed again purporting to convey the Benton Street property from Mildred and Crawford Patton to Jerry Harris. Unbeknownst to the Pattons, this deed was successfully recorded in the Register of Deeds office. Six months later, on January 20, 2010, Larry Patton paid the real property taxes for the Benton Street property and was provided with a receipt listing the name Jerry Harris. The October 8, 2014 complaint stated, "This is when I found out that Emma Summerville had notarized and Christina Morgan had filed that forged, fraudulent deed on the property[.]" According to the complaint, Larry Patton called Christina Morgan to ask why she did not verify the validity of the deed but received no explanation. In June 2010, Larry Patton and Mildred Patton went to the Memphis Police Department and filed a complaint regarding the forgery. Mildred and Crawford Patton executed a quitclaim deed on June 8, 2010, conveying the Benton Street property to Mildred and Larry Patton. On or about June 16, 2010, Larry took the deed to the Shelby County Register's office, but he was told that he could not file his deed.

The October 8, 2014 complaint recited that Mildred, Crawford, and Larry Patton had jointly filed a pro se lawsuit in chancery court on June 23, 2010, entitled "Petition for Cancellation of Forged Deed and to Quiet Title." The only defendant in that lawsuit was Jerry L. Harris. The 2010 complaint alleged that the June 23, 2009 deed was "fraudulent, forged, and void." While the matter was pending, Larry Patton returned to the Shelby County Register of Deeds office and successfully filed his June 8, 2010 quitclaim deed on August 31, 2012. The chancery court entered an order in the action to quiet title on May 1, 2013, granting summary judgment in favor of Mildred and Crawford Patton, declaring that the June 23, 2009 deed was a forgery and "null and void" and ordering the

2

deed stricken from the records of the Shelby County Register.

In their October 8, 2014 complaint, Mildred Patton and Larry Patton alleged that defendant Christina Morgan committed "negligence with malice" by recording the June 23, 2009 deed days after speaking with Larry Patton about the prior forged deed. They alleged that the Register's office failed to exercise reasonable care in allowing the forged deed to be filed. Plaintiffs sought compensatory and punitive damages due to Defendants' actions. They attached numerous documents to their complaint, including the various quitclaim deeds, numerous letters and tax notices regarding the property, documents related to their complaint with the police department, their previous chancery court petition and the May 1, 2013 summary judgment order, in addition to other items.

On November 14, 2014, Defendants filed a motion to dismiss the October 8, 2014 complaint based on the GTLA's one year statute of limitations and the allegations relating to events that occurred in June 2009. The case was subsequently transferred to circuit court due to its jurisdiction over GTLA claims. Defendants renewed their motion to dismiss in circuit court.

Before the motion to dismiss was heard, Mildred Patton filed pro se a First Amended Complaint. The First Amended Complaint removed Larry Patton as a plaintiff. It repeated the allegations regarding the forgery in June 2009 but omitted all references to the discovery of the forgery and the prior chancery court lawsuit filed in 2010. The First Amended Complaint stated, "On or around January, 2014, Plaintiff learned for the first time that the Quit Claim Deed (Inst. No. 09075677) recorded by Jerry L. Harris contained the forged signatures of the Plaintiff and Crawford Patton and that Defendant Summerville knowingly and fraudulently attested" the deed. Defendants filed another motion to dismiss. They argued that the allegation that Mildred Patton did not learn about the forgery until 2014 was "patently false" given her statements in the original complaint and the previous chancery court lawsuit she filed against Jerry Harris in 2010. Defendants argued that Mildred Patton had unequivocal knowledge that a forgery had occurred, at the very latest, when the chancery court entered the order on May 1, 2013, declaring the deed a forgery, and therefore her complaint against Defendants filed on October 8, 2014, was barred by the one year statute of limitations.

Mildred Patton subsequently filed a motion for permission to amend her complaint, again, to rename Larry Patton as a plaintiff and necessary party. The motion alleged that Larry Patton was "inadvertently tak[en] off" the First Amended Complaint and that he possessed all of the knowledge regarding the lawsuits and investigation, while Mildred Patton did not. The motion to amend alleged that Larry Patton was the principal plaintiff who incurred the loss and damage when the property was deeded to Jerry Harris. The motion to amend also asserted that the complaint was filed "well within the one year

3

statute of limitations."

In response, Defendants did not object to Larry Patton being renamed as a plaintiff, but they asked the court to deny any further amendment to the complaint as futile due to the statute of limitations. In a reply, Plaintiffs contended that the statute of limitations did not begin to run until October 2013, when Larry Patton received a property tax bill and learned that the Register's office had finally complied with the May 1, 2013 order and changed its records to reflect that the property was owned by Mildred Patton and Larry Patton. Larry Patton argued that he became aware of his "legal ability" to file a lawsuit at that time. He also argued that his mother Mildred "is 90 years old and would fall under the category of incompetents" for purposes of tolling the statute of limitations.

After a hearing, the circuit court entered an order partially granting Mildred Patton's motion for permission to amend her First Amended Complaint. The court permitted Mildred Patton to rename Larry Patton as a plaintiff. However, it instructed her to submit a proposed amended complaint containing any further amendments for the court to consider at the next hearing. Larry Patton and Mildred Patton subsequently submitted an "Amended Complaint for Negligence" on December 3, 2015. This complaint removed the allegation that the forgery was not discovered until 2014. Like the original complaint, it stated that Larry Patton received a property tax receipt in January 2010 showing the property owner as Jerry Harris, and "[t]his is when I found out that some error had been made with regard to the name on the property taxes." This complaint also recited that in June 2010, Mildred and Crawford Patton executed a quitclaim deed conveying the property to Mildred and Larry Patton. It stated that Larry Patton was unable to record his quitclaim deed at the Register's office and filed a complaint with the police department regarding the forgery. According to this complaint, Larry Patton was present when the police department questioned Emma Summerville during the investigation in June 2010, and she acknowledged that someone at her home might have used her notary stamp to stamp the deed. Also according to this amended complaint, a police sergeant told Larry Patton in June 2010 that Jerry Harris could not be located, that the deed to him was bogus, and that Larry Patton should take the matter to the Register's office "because it was their fault anyway." The amended complaint asserted that Summerville was negligent in failing to exercise reasonable care to safeguard her stamp and that Christina Morgan was negligent by failing to discover that the quitclaim deed was forged.

Defendants filed a motion to strike the proposed amended complaint as futile, as it confirmed that Plaintiffs discovered their injury in 2010, well over a year prior to filing this lawsuit in 2014. Plaintiffs filed a response to the motion to strike, arguing that Larry Patton was prevented from filing this lawsuit earlier because he did not own a legal estate

4

in the property. Plaintiffs' response stated, "I knew of my alleged injuries, but [was] legally disabled to do anything about it until my name was on the property[.]"

The parties filed numerous additional related motions and responses basically restating their positions regarding the proposed amendments and the applicability of the statute of limitations. Plaintiffs attached discovery responses, affidavits, and other documents in support of their position. Without leave of court, Plaintiffs also filed another pro se "Amended Complaint for Negligence" on January 13, 2016, which, again, omitted all references to the discovery of their injury in 2010. Defendants maintained that no matter how many times Plaintiffs attempted to amend their complaint to restate the facts, their GTLA claim was untimely.

After two more hearings, the trial court entered an order granting Defendants' motion to dismiss the amended complaint. According to the order, the trial court based its decision on "the submissions of the parties, statements of counsel, and the entire record herein." The trial court found that Plaintiffs were on notice of their alleged injuries when they first learned of the forged deed, and no later than June 2010 when they filed their petition to quiet title in chancery court. The trial court found that Larry Patton's standing argument lacked merit because he had an ownership interest in the property as of June 8, 2010, the date of the quitclaim deed conveying the property from Crawford and Mildred Patton to Larry and Mildred Patton. The court found that Larry Patton had a distinct and palpable injury related to the forgery as early as June 2010 when he filed the petition to quiet title. Alternatively, the court found that "at the very latest," Larry Patton had standing by the time of the May 1, 2013 chancery court order setting aside the forged deed and declaring it null and void. Because Plaintiffs waited until October 8, 2014, to file this lawsuit, the trial court found that it was barred by the GTLA's one year statute of limitations. The trial court found that Plaintiffs' additional proposed amendments were moot because even if the court considered them, the claims were barred by the statute of limitations. Plaintiffs timely filed a notice of appeal.

## II. ISSUES PRESENTED

On appeal, Plaintiffs, proceeding pro se, argue that the circuit court erred in dismissing their lawsuit based on the statute of limitations. They present the following issues, as we perceive them, for review on appeal:

1. Whether the statute of limitations was tolled due to the disability of Mildred Patton;

2. Whether the statute of limitations was tolled due to Larry Patton's legal inability to file this lawsuit and/or the discovery rule;

3. Whether equitable estoppel tolled the statute of limitations; and

4. Whether this lawsuit relates back to the date of the original chancery court lawsuit pursuant to Tennessee Rule of Civil Procedure 15.03.

Defendants assert that dismissal based on the statute of limitations was warranted, but in the alternative, they argue that dismissal was appropriate based on collateral estoppel or sovereign immunity. For the following reasons, we affirm the decision of the circuit court and remand for further proceedings.

## III. DISCUSSION

One of the provisions of the GTLA that demands strict compliance is the statute of limitations. *Moreno v. City of Clarksville*, 479 S.W.3d 795, 810 (Tenn. 2015) (citing *Lynn v. City of Jackson*, 63 S.W.3d 332, 337 (Tenn. 2001)). A GTLA claim "must be commenced within twelve (12) months after the cause of action arises." Tenn. Code Ann. § 29-20-305(b). "Tennessee law views the twelve-month limitation period for bringing an action under the GTLA as a condition precedent which must be met. If suit is not filed within the statutory period, both the right and the remedy is extinguished." *Moreno*, 479 S.W.3d at 810 (quoting *Lynn*, 63 S.W.3d at 337). "Because the failure to comply with a statute of limitations is an affirmative defense, the Defendants bear the burden of proof on the issue." *Sherrill v. Souder*, 325 S.W.3d 584, 596 (Tenn. 2010) (quotations omitted). However, "'when a defendant establishes [his or her] entitlement to a statute of limitations defense, the burden of proof shifts to the plaintiff to establish an exception.'" *Moreno*, 479 S.W.3d at 802 (quoting *Deal v. Hastings*, No. W2003-00912-COA-R3-CV, 2003 WL 23100341, at *1 (Tenn. Ct. App. Dec. 22, 2003)).

In this case, Defendants filed a motion to dismiss based on the statute of limitations, and in response, Plaintiffs submitted discovery responses, affidavits, and numerous other documents in an attempt to demonstrate that their claim was not time-barred. The trial court purportedly granted the "motion to dismiss" but also stated that the decision was based on "the submissions of the parties" and "the entire record." Therefore, we will review the order as one granting summary judgment. *See Vandergriff v. ParkRidge E. Hosp.*, 482 S.W.3d 545, 555 n.8 (Tenn. Ct. App. 2015) ("Converting a motion to dismiss under Rule 12.02(6) into a motion for summary judgment is appropriate when 'matters outside the pleading are presented to and not excluded by the [trial] court.'") (quoting Tenn. R. Civ. P. 12.02). We review a trial court's entry of summary judgment as a question of law with no presumption of correctness attached to the trial court's decision. *Sherrill*, 325 S.W.3d at 596. We may affirm the grant of

6

summary judgment if the facts in the record and all reasonable inferences demonstrate that Plaintiffs' cause of action accrued on or prior to October 8, 2013. *See id.* at 597.

"[A] cause of action 'arises' under the GTLA when the plaintiff discovers, or in the exercise of reasonable care should have discovered, that he or she sustained an injury as a result of the defendant's wrongful conduct." *Sutton v. Barnes*, 78 S.W.3d 908, 916 (Tenn. Ct. App. 2002) (citing *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998)). Here, Plaintiffs acknowledge that they became aware of the forgery in 2010. In June 2010, both Mildred Patton and Larry Patton went to the police department to report the forgery. Larry Patton attempted to confront Christina Morgan about the recording of the forged deed, and he was present when Emma Summerville was interviewed during the investigation. Mildred and Crawford Patton conveyed the property by quitclaim deed to Mildred and Larry Patton, but they were not permitted to record the deed in the Register's office. Plaintiffs also filed a petition to cancel the forged deed and to quiet title in 2010. In May 2013, the chancery court lawsuit was resolved with an order declaring the June 23, 2009 deed a forgery and void. Despite this clear knowledge of the forgery and of Defendants' alleged actions in connection therewith, Plaintiffs contend that the statute of limitations does not bar their claim for two reasons: Larry Patton's legal inability to file this lawsuit; and Mildred Patton's mental disability that prevented her from filing this lawsuit. We address each argument in turn.

### A. Larry Patton's Ability to File Suit

"[A] cause of action in tort does not accrue until a judicial remedy is available." *Sutton*, 78 S.W.3d at 913 (quoting *Wyatt v. A-Best, Co., Inc.*, 910 S.W.2d 851, 855 (Tenn. 1995)). "A judicial remedy is considered 'available' when (1) a defendant breaches a legally recognized duty owed to a plaintiff and (2) the breach causes the plaintiff legally cognizable damage." *Id.* The breach of a legally cognizable duty occurs when a plaintiff discovers or should have discovered the occasion, manner, and means by which a breach of duty occurred that produced injury and the identity of the defendant who breached the duty. *Wyatt*, 910 S.W.2d at 855. Legally cognizable damage occurs when the plaintiff discovers facts that would support an action for tort against the tortfeasor. *Wyatt*, 910 S.W.2d at 855.

Larry Patton claims that he was legally unable to file suit until October 2013, when he learned that the Register of Deeds office had updated its records in accordance with the May 1, 2013 chancery court order declaring the forged deed null and void. Larry Patton claims that Jerry Harris owned the Benton Street property from the date of the forged deed in 2009 until entry of the May 1, 2013 order, and therefore, Larry Patton

owned no interest in the property and could not file this lawsuit during that time. We find no support for this assertion in the law or in the record.

A forged deed passes no title to the party obtaining it. *Swan v. Castleman*, 63 Tenn. 257, 267 (1874); *Lowe v. Wright*, 292 S.W.2d 413, 417 (Tenn. Ct. App. 1956). "A forged deed is 'null and void *upon its execution*.'" *Mynatt v. Lemarr*, No. E2013-02347-COA-R3-CV, 2014 WL 4412346, at *9 (Tenn. Ct. App. Sept. 9, 2014) (quoting *Beazley v. Turgeon*, 772 S.W.2d 53, 59 (Tenn. Ct. App. 1988)) (emphasis added). "[V]oid deeds are subject to attack by third parties." *Hall v. Fowler*, No. W2006-00385-COA-R3-CV, 2007 WL 4554651, at *4 (Tenn. Ct. App. Dec. 28, 2007). Larry Patton obtained an ownership interest in the Benton Street property in June 2010 pursuant to the quitclaim deed executed by Crawford and Mildred Patton. The fact that the Register's office allegedly refused to *register* the quitclaim deed does not mean that Larry Patton was thereby prevented from becoming an owner and gaining an interest in the property. "Under Tennessee's recording system, an unregistered instrument affecting an interest in real property *is effective as between the parties* but cannot bind third parties without actual notice until the instrument is properly registered." *Holiday Hosp. Franchising, Inc. v. States Res., Inc.*, 232 S.W.3d 41, 48 (Tenn. Ct. App. 2006). Tennessee Code Annotated section 66-26-101 provides, in pertinent part, that all of the instruments that may be registered as provided by statute "shall have effect between the parties to the same, and their heirs and representatives, without registration." Accordingly, despite the alleged refusal of the Register's office to record the deed, the conveyance remained binding. *See Milledgeville United Methodist Church v. Melton*, 388 S.W.3d 280, 288-89 (Tenn. Ct. App. 2012). Furthermore, we note that the Register's office *did* register the quitclaim deed to Larry Patton in 2012.

In sum, Larry Patton owned an interest in the Benton Street property as of 2010, his interest was recorded in 2012, and in May 2013 the chancery court declared the June 23, 2009 deed a forgery. Throughout this period, Larry Patton was aware of Defendants' allegedly negligent actions in connection with the recording of the forged deed. Larry Patton was not legally disabled from filing this lawsuit against Defendants while he waited for notice that the Register's office had updated its records to fully strike the forged deed to Jerry Harris. We agree with the trial court's conclusion that at the absolute latest, in May 2013, Larry Patton knew, or in the exercise of reasonable diligence should have known, that an actionable injury had occurred. Therefore, his October 8, 2014 complaint is time-barred.

Larry Patton also argues that the chancellor in the 2010 action to quiet title "ruled that Larry D. Patton did not have legal estate of the property at 2087 Benton to sue Jerry

L. Harris in Shelby County Chancery Court." Specifically, he claims that the chancellor told him that he could not participate in *the action to quiet title* because he personally had no legal estate in the Benton Street property and because he could not represent his mother and brother as a pro se litigant. From that alleged statement, Larry Patton apparently inferred that he was unable to sue Defendants either. In the case at bar, he submitted affidavits from his mother and brother stating that the chancellor told Larry Patton that he had to remove his name from the complaint because he did not have legal estate in the property, as his name was not on the deed. The record before us contains no transcript or order from the chancery court proceeding reflecting such a ruling. However, Plaintiffs' chancery court petition for cancellation of the forged deed and to quiet title is included in the record, and it did not mention the 2010 quitclaim deed from Crawford and Mildred Patton to Larry and Mildred Patton. Instead, it stated, inexplicably, that Larry, Mildred, and Crawford had been owners of the Benton Street property "at all times since January 2000." The petition stated that all three plaintiffs claimed an interest in the property "by virtue of" deeds executed in 1991 and 1992, without mention of the 2010 quitclaim deed. Because Larry Patton now appears to concede that he did not own an interest in the property prior to 2010, this may explain why the chancellor allegedly told Larry Patton that he could not participate in the action to quiet title because he did not own any interest in the property by virtue of the deeds he referenced in the petition. "One may bring an action to quiet title in realty but to do so he or she must have an interest in the property at issue." *Paczko v. Suntrust Mortgs., Inc.*, No. M2011-02528-COA-R3-CV, 2012 WL 4450896, at *3 (Tenn. Ct. App. Sept. 25, 2012) (citing *Indus. Dev. Bd. of City of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995); *Hall*, 2007 WL 4554651, at *5). In any event, without any order (or even a transcript) from the chancery court proceeding to confirm what the chancellor allegedly said regarding Larry Patton's participation in the action to quiet title, we decline to further consider this issue. "Tennessee law is clear that a trial court speaks through its written orders." *In re Navada N.*, 498 S.W.3d 579, 594 (Tenn. Ct. App. 2016).

The facts in the record and all reasonable inferences demonstrate that Larry Patton's cause of action against Defendants accrued prior to October 8, 2013, and it was not tolled due to any legal disability. Therefore, his October 8, 2014 complaint was barred by the GTLA's one year statute of limitations.

### B.  *Mildred Patton's Alleged Incompetence*

Next, we consider whether the trial court should have found that the statute of limitations was tolled due to Mildred Patton's incompetence. The facts clearly demonstrate that Mildred Patton became aware of the forged deed in 2010, as she went to

the police department to report the forgery and filed the chancery court petition to quiet title and have the deed declared void in June 2010. In 2010, the tolling statute for civil actions stated:

> If the person entitled to commence an action is, *at the time the cause of action accrued*, either within the age of eighteen (18) years, or *of unsound mind*, such person, or such person's representatives and privies, as the case may be, may commence the action, after the removal of such disability, within the time of limitation for the particular cause of action, unless it exceeds three (3) years, and in that case within three (3) years from the removal of such disability.

Tenn. Code Ann. § 28-1-106 (2010) (emphasis added).[1] We must determine if a genuine issue of material fact exists regarding whether Mildred Patton was of unsound mind in 2010 when she became aware of the forged deed. *Sherrill*, 325 S.W.3d at 600. We conclude that there is not a genuine issue of material fact regarding this issue.

"[T]he modern test for determining whether an individual is of 'unsound mind' for purposes of section 28-1-106 is whether that individual was unable to manage his or her day-to-day affairs at the time the cause of action accrued." *Sherrill*, 325 S.W.3d at 601. The evidence in the record demonstrates that Mildred Patton went to the police department to report the forged deed in 2010, executed a quitclaim deed in 2010, and also filed a pro se petition to quiet title against Jerry Harris in 2010. Indeed, she filed this very lawsuit pro se and has signed countless motions and even an affidavit in her own capacity. Although Larry Patton argued within a motion seeking to rename him as a

---

[1] The tolling statute was amended effective July 1, 2011, and again effective April 27, 2016. We will apply the version of the tolling statute effective when Mildred Patton's claim accrued in 2010. The 2011 public chapter stated, "Nothing in this legislation shall be construed to alter or otherwise affect . . . the rights or responsibilities of individuals covered by the provision on the day before the date of enactment of this legislation." 2011 Tenn. Laws Pub. Ch. 47 § 107 (S.B. 850). *See also Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 845 (6th Cir. 2015) (applying the prior version of section 28-1-106 in effect as of the date the cause of action accrued in 2010); *Hessmer v. Bad Gov't*, No. 3:12-CV-590, 2012 WL 3945315, at *9 n.3 (M.D. Tenn. Sept. 10, 2012) *approved* No. 3-12-0590, 2012 WL 5197759 (M.D. Tenn. Oct. 19, 2012) (applying the version in effect at the time the plaintiff's causes of action accrued in 1999 and 2000 because the 2011 amendment to 28-1-106 "applied only to actions that accrued on or after its effective date"). However, even under the 2011 amendment our result would be the same. The 2016 amendment is likewise inapplicable because it applies "only to causes of action filed on or after" the date it became law. 2016 Tenn. Laws Pub. Ch. 932 (S.B. 1597).

party that Mildred Patton was "90 years old and would fall under the category of incompetents" for purposes of tolling the statute of limitations, the *evidence* in the record does not support this bare assertion. Larry Patton filed an affidavit in this lawsuit on January 28, 2016, which states, in pertinent part:

> On June 26, 2009, I was a student . . . when all hell broke out with the property at 2087 Benton. Jerry L. Harris had forged the signatures of Crawford Patton and Mildred Patton . . . .
> My mother, *Mildred Patton was 84 years old and in good health*. My mother's health started going down fast because she was worrying about the property and how someone could just take your house and when you go to the Register's Office and complain that you don't know a Jerry L. Harris, it just falls on deaf ears.
> . . . .
> My mother's health was getting worse, and looked like she was about to worry herself to her grave. I had to assure my mother that I would take care of this to stop her from worrying and stressing herself out.
> . . . .
> My mother's health is better now and she will be 91 in March[.]

This affidavit confirms that Mildred Patton was "in good health" when the forgery occurred and that she knew what had occurred and took steps to rectify the situation. The vague statement that her "health started going down fast" is not sufficient to create a genuine issue of material fact considering that Mildred Patton continued to represent herself pro se in two lawsuits, routinely signing and submitting motions, an affidavit, and even her pro se brief in this appeal. In Plaintiffs' brief on appeal, they mention that Mildred Patton gave Larry Patton power of attorney in 2008. However, this fact was not presented to the trial judge, and in any event, it would not, by itself, establish that Mildred Patton was incompetent. The evidence does not demonstrate that she is or has been incapable of attending to business or unable to manage her day-to-day affairs such that the statute of limitations would be tolled.

### C. *Equitable Estoppel*

Plaintiffs list one issue on appeal that mentions the doctrine of equitable estoppel. However, this issue was not raised in the trial court. "It has long been the general rule that questions not raised in the trial court will not be entertained on appeal[.]" *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983). *See, e.g.*, *Alexander v. Armentrout*, 24 S.W.3d 267, 272 (Tenn. 2000) ("Because the defense of equitable estoppel was never raised during the trial court proceedings, the issue was waived and the Court of Appeals should not have considered the defense."). We decline to consider the issue.

11

## D.    Tennessee Rule of Civil Procedure 15.03

Finally, we address Plaintiffs' contention that their amended complaint in this lawsuit relates back to the date of their complaint in the separate chancery court lawsuit filed in 2010 pursuant to Tennessee Rule of Civil Procedure 15.03.  Rule 15.03 provides, "Whenever the claim or defense asserted in amended pleadings arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."  Tenn. R. Civ. P. 15.03. Here, Plaintiffs' amended pleading related back to the date of the original pleading *in this lawsuit*.  However, the amended pleading *in this lawsuit* was not an amendment of the complaint from the 2010 lawsuit, so it does not relate back to its filing date.  Rule 15.03 does not permit amended pleadings in one lawsuit to relate back to the date of original pleadings in a separate lawsuit that was concluded *on the merits* long ago.[2]

"There is [] a fundamental difference between filing a second lawsuit and amending an original, timely-filed complaint."  *Doyle v. Frost*, 49 S.W.3d 853, 859 (Tenn. 2001).  "The relation back doctrine does not allow a new cause of action to be filed outside the limitations period[.]" *Id.  See, e.g., Thompson v. Greyhound Lines, Inc.*, 574 F. App'x 407, 409 (5th Cir. 2014) ("the second complaint does not relate back to the first complaint because the second complaint was not an amendment, but rather the commencement of a separate action"); *O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1111 (9th Cir. 2006) (explaining that a litigant's second complaint did not relate back to her first complaint because the second complaint was not an amendment to her first complaint, but rather a separate filing under Federal Rule of Civil Procedure 15); *Alexander v. Foegen*, 443 F. App'x 333, 334 (10th Cir. 2011) ("[appellant's] new suit cannot 'relate back' to a dismissed complaint").[3]  Accordingly, Plaintiffs are not entitled to relief pursuant to Rule 15.03.  All other issues are pretermitted.

---

[2]We recognize that a plaintiff who files a second action within one year of a voluntary non-suit is afforded the same procedural and substantive benefits available in the first action, including the right to amend the complaint pursuant to Rule 15.  *Energy Sav. Prod., Inc. v. Carney*, 737 S.W.2d 783, 785 (Tenn. Ct. App. 1987).  "A savings statute allows a case that has been dismissed, for reasons other than a dismissal on the merits, to be [re-filed] within a set period– even after the statute of limitations has run on the action." *Circle C Constr., LLC v. Nilsen*, 484 S.W.3d 914, 919 (Tenn. 2016).  This case does not involve re-filing pursuant to the saving statute.

[3]When construing Tennessee Rule of Civil Procedure 15.03, the Tennessee Supreme Court has considered federal cases "construing the corresponding federal rule, Fed. R. Civ. P. 15(c)." *Doyle*, 49 S.W.3d at 856.

## IV. Conclusion

For the aforementioned reasons, the decision of the circuit court is hereby affirmed and remanded for further proceedings. Costs of this appeal are taxed to the appellants, Larry D. Patton and Mildred H. Patton, and their surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE